THE PEOPLE OF THE STATE OF NEW YORK ex rel. BROADWAY AND NINETY-SIXTH STREET REALTY COMPANY, Appellant, v. WILLIAM E. WALSH, as Superintendent of Buildings of the Borough of Manhattan, City of New York, and TRIO AMUSE-MENT COMPANY, INC., Respondents.

First Department, November 17, 1922.

Municipal corporations — city of New York — mandamus by taxpayer to compel superintendent of buildings to cancel and revoke building permit — taxpayer is person aggrieved within Greater New York charter, § 719, subd. 2, authorizing appeals from decisions of superintendent of buildings to board of appeals — remedy of relator was by appeal to board of appeals — relator not having exhausted his remedy is not entitled to mandamus.

The relator, which was a taxpayer in the city of New York, is a person aggrieved within the meaning of subdivision 2 of section 719 of the Greater New York charter providing that an appeal may be taken by any person aggrieved from an order, requirement, decision or determination made by the superintendent of buildings.

Accordingly, the relator's remedy to have a building permit canceled and revoked, which had been granted by the superintendent of buildings permitting the reconstruction of a building, was by an appeal to the board of appeals of the city of New York under section 719 of the Greater New York charter, and in case it was not satisfied with the decision of the board of appeals it could have had that decision reviewed by certiorari as provided by section 719-a of the charter.

The relator having failed to exhaust its remedy by appeal to the board of appeals is not in a position to apply to the court for relief by way of mandamus to compel the superintendent of buildings to cancel and revoke the permit, and its motion for a final order was properly denied.

APPEAL by the relator, Broadway and Ninety-sixth Street Realty Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of November, 1921, denying the relator's motion for a peremptory writ of mandamus made after the trial of the issues raised by an alternative writ.

*Saul E. Rogers* of counsel [*Percy Heiliger* with him on the brief], for the appellant.

*John P. O'Brien* [*Willard S. Allen* of counsel; *John F. O'Brien* and *William T. Kennedy* with him on the brief], for the respondent William E. Walsh.

*Christian S. Lorentzen* [*M. E. Kelley* of counsel], for the respondent Trio Amusement Company.

DOWLING, J.:

The building involved in this controversy is situated on the southwest corner of Broadway and Ninety-fifth street, in the borough of Manhattan, New York city, and is a one-story structure about thirty feet high. Ninety-fifth street, after crossing Broadway, inclines sharply downward, and there is one floor approximately on Broadway, and another underneath approximately on the Ninety-fifth street level. The building was originally a market. In 1917 the present owner altered the building so that it might be used for stores and a skating rink and moving picture theatre on the first or Broadway floor, with offices over the stores, and balconies along the sides of the skating rink. An application and plans were duly filed, a permit was issued and the work was actually completed. Temporary certificates of occupancy were issued on December 20, 1917, January 19, 1918, February 20, 1918, and a final certificate of occupancy was issued on February 27, 1918. On December 20, 1917, a license was issued to operate a common show in the building of the class of a skating rink, and on December 24, 1917, a license was issued to operate a common show in the building of the class of moving pictures. The skating rink was open to the public on December 24, 1917, and moving pictures were exhibited in the rink on a screen erected on the south wall, and such use of the building continued from that date until March 23, 1918. The first floor and balcony from December 24, 1917, to March 23, 1918, were used for public entertainment, consisting of ice skating and the display of motion pictures, and

**470** PEOPLE EX REL. BROADWAY & 96TH ST. REALTY CO. *v.* WALSH.

First Department, November, 1922. [Vol. 203

the seating capacity was upwards of 600. The main floor was certified to accommodate 1,000 persons, the balcony 500 persons. No objection was ever made to such use of the premises for 1,500 people.

In March, 1918, plans were filed for the removal of the floor of the ice rink and the installation of seats on a floor to accommodate 926 persons, with 280 people seated in the balcony, and to devote the premises entirely to the exhibition of moving pictures. The number of people to be accommodated was thus reduced from 1,500 to 1,206. The plans were approved and a permit issued and the work completed. No further certificate of occupancy was ever issued or required after the final certificate of February 27, 1918.

The premises in question are owned by Ninety-fifth Street and Broadway Corporation, a domestic corporation, and the lessee of the theatre therein is the Trio Amusement Company, Inc.

Litigation almost immediately followed the use of the entire building for motion picture purposes. One Louis Jacobs, a taxpayer, brought an action in equity for a judgment that the superintendent of buildings be restrained from acting under the approval of plans for the alteration of the building in question into a moving picture theatre and from permitting the work to be carried out, and that it be adjudged that the building, if altered under the plans, would be illegally used as a theatre or place of public amusement.

At the same time Jacobs instituted a proceeding to obtain a peremptory writ of mandamus to compel the superintendent to revoke his approvals and permits for the reconstruction of the building, and to cause all work on the alteration and reconstruction to be stopped. The petition and papers upon which the motion for the peremptory writ was made set forth practically the same objection and defects which are now claimed to exist in the building by the papers in the present proceeding.

In the equity action a motion for a temporary injunction was denied, as was the motion for a peremptory mandamus in the proceeding, and on appeal to this court both orders were affirmed. (*Jacobs v. Walsh*, 185 App. Div. 922; *People ex rel. Jacobs v. Walsh*, Id. 922.) Meantime an application, made to this court that an injunction issue therefrom pending the determination of the appeals, was denied. (*Jacobs v. Walsh*, 185 App. Div. 890.) Motions for leave to appeal to the Court of Appeals in the mandamus proceeding were denied by this court (*People ex rel. Jacobs v. Walsh*, 186 App. Div. 890) and by the Court of Appeals.

The proceeding now under consideration was brought in 1919 and an amended alternative writ was granted on November 25,

1919. Issues raised by the return were tried by the court at Trial Term without a jury, and findings made by it, upon which a motion was made for a peremptory writ of mandamus at Special Term. That motion was denied without deciding the question as to whether any unlawful or other defects existed in the building, upon the ground that, before applying for a writ of mandamus, the relator should have exhausted the machinery of the administrative offices by appealing from the determination of the superintendent of buildings to the board of appeals. Whether such decision is correct is the sole question presented by this appeal.

The objection that relator should first have appealed to the board of appeals before applying to the court for relief was raised by demurrer to the alternative writ, which was overruled by the court at Special Term upon the ground that there was nothing in the alternative writ to suggest that such remedy of appeal was actually open to the relator as an adequate means to redress its grievance, and that, therefore, the objection could not be taken by demurrer but must be presented by the return to the alternative writ. (N. Y. L. J. Feb. 10, 1920.) Thereafter the necessity for relator to take an appeal to the board of appeals before it could come into court for relief, was clearly and fully pleaded by the superintendent of buildings and Trio Amusement Company, Inc., by their separate returns to the amended alternative writ herein. So that the question of jurisdiction has been consistently raised throughout this proceeding by the respondents.

The relief asked for by the alternative writ herein is " to forthwith cancel and revoke a building permit or approval granted by the respondent on or about March 21st, 1918, permitting the alteration and reconstruction of the premises situate at the southwest corner of Broadway and 95th Street, in the Borough of Manhattan, City and County of New York, permitting the conversion of said premises into a theatre or place of public entertainment with a seating capacity in excess of six hundred (600) seats, and that the Respondent William E. Walsh, as Superintendent of Buildings of the Borough of Manhattan, City of New York, forthwith disapprove a certain amendment to alteration application No. 1269 of 1917, filed in the office of the said Superintendent of Buildings on or about March 15th, 1918, and approved by the said Superintendent of Buildings on or about March 21st, 1918, and that the respondent stop and arrest the use of the said premises as a theatre or place of public entertainment with a seating capacity in excess of six hundred (600) seats, and that the respondent cancel and revoke any and all certificates of occupancy granted by him permitting the premises to be used and occupied as a theatre or place of public

**472** PEOPLE EX REL. BROADWAY & 96TH ST. REALTY CO. *v.* WALSH.

First Department, November, 1922. [Vol. 203

entertainment with a seating capacity of six hundred (600) or more seats, or that the respondent show cause why the command of said writ shall not be obeyed."

The creation of the board of standards and appeals by chapter 503 of the Laws of 1916 (§ 6) effected a new and, as it seems to me, a consistent and logical method of procedure to be followed in all cases where the provisions of the statute allowed an appeal. Thereby the following sections (among others) were added to the Greater New York charter (Laws of 1901, chap. 466), being chapter 14-A thereof:

" § 719. 1. What appealable. An appeal may be taken to the board of appeals from any order, requirement, decision or determination made by any superintendent of buildings under the authority of title two of chapter nine of this act or of any ordinance (except an order requiring an unsafe building, staging or structure to be made safe, and except an order punishing, removing or dismissing an employee, inspector, or other subordinate), or made by the fire commissioner under the authority of title three of chapter fifteen of this act or of any ordinance, and from any rule, regulation, amendment or repeal thereof relating to the construction, alteration, structural changes in, equipment, occupancy or use of any building or structure, or vaults and sidewalks appurtenant thereto.

" 2. Who may appeal. Such appeal may be taken by any person aggrieved or by any officer, department, board or bureau of the city.

" 3. Appeal how taken. Such appeal shall be taken within such time as shall be prescribed by the board of appeals by general rule, by filing with the officer from whom the appeal is taken and with the board of appeals of a notice of appeal, specifying the grounds thereof. The officers from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken.

" 4. Stay. An appeal stays all proceedings in furtherance of the action appealed from, unless the officer from whom the appeal is taken certifies to the board of appeals after the notice of appeal shall have been filed with him that by reason of facts stated in the certificate, a stay would, in his opinion, cause imminent peril to life or property, in which case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of appeals or by the Supreme Court, on application, on notice to the officer from whom the appeal is taken and on due cause shown.

" 5. Hearing of and decision upon appeal. The board of appeals

shall fix a reasonable time for the hearing of the appeal and give due notice thereof to the parties, and decide the same within a reasonable time. Upon the hearing, any party may appear in person or by agent or by attorney. The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and shall make such order, requirement, decision or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer from whom the appeal is taken. Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law, the board of appeals shall have power in passing upon appeals, to vary or modify any rule or regulation or the provisions of any existing law or ordinance relating to the construction, structural changes in, equipment, alteration or removal of buildings or structures, or vaults and sidewalks appurtenant thereto, so that the spirit of the law shall be observed, public safety secured and substantial justice done. The board of appeals shall not vary or modify the Tenement House Law nor any rule, regulation or ruling of the tenement house commissioner.  *  *  *."

The jurisdiction of appeals thus created by legislative action was conferred upon a board of appeals composed (Greater N. Y. Charter, § 718d) of the chief of the uniformed force of the fire department of the city of New York and of the six appointed members of the board of standards and appeals named by the mayor (Id. § 718), three of whom were required to be, respectively, an architect, a structural engineer and a builder, each with not less than ten years' experience as such. The chairman of the board was further required to be an architect or structural engineer of at least fifteen years' experience. To the board of standards and appeals, the majority of which was required to be made up of men experienced in matters affecting building construction with the city officials expert in matters affecting fire risk and protection, the Legislature had given the widest possible field of jurisdiction affecting the enforcement of the Building Code, the application of laws, ordinances and rules affecting buildings, and the supervision of buildings generally as set forth at length in section 718a of the Greater New York charter. To the board of appeals, consisting of the seven experienced men enumerated, had been given the wide jurisdiction in appeals from the action of the superintendent of buildings which has been set forth in subdivision 1 of section 719. Except as to the reservations made therein, the field of appeal is very broad and extensive, and the action of the superintendent of buildings sought to be reviewed herein comes clearly within its provisions.

As an appeal may be taken by any person aggrieved, the relator as a taxpayer is as much interested and has as much right to prosecute an appeal to the board, as he has to institute a special proceeding in court to review the acts of the superintendent of buildings.

The procedure of appeal within the line of administrative officials before allowing recourse to the courts, insures the benefit of trained and competent expert opinion and judgment, applied to the facts of each particular case by an experienced tribunal, which is not limited to an affirmance or reversal of the action of the superintendent of buildings, but may use its judgment in making such modification in his action as in its opinion should be made, and to that end is vested with his powers, in order that the spirit of the law shall be observed, public safety secured and substantial justice done.

The present case affords a demonstration of the necessity and advisability of having the final judgment of a board of experts on the conditions which actually exist in a building under consideration and the practical effect thereof. The findings of fact set forth certain physical conditions as existing, but there is no conclusion of law that they violate any statute, ordinance, rule or regulation, and the resultant effect of the condition upon the suitability of the building for use or occupancy, and upon its compliance or non-compliance with the law, is a matter which requires the court at Special Term either to actually visit the premises, or to study the building plans in connection with the findings, and in any event to determine the bearing of the facts found upon the provision of law applicable to the structure.

The board of appeals would not only have power to determine from an expert viewpoint whether the building complied with the requirements of law, but if minor and unimportant defects existed, could order them immediately remedied.

For the proper exercise of the powers conferred upon it, and in order that its jurisdiction may be available to the public, it is necessary that the board of appeals should fix a reasonable time within which it will entertain appeals (the power to fix which is given by section 719, subdivision 3, of the charter); and also promulgate its own decisions that they may be accessible to the public (a duty which is regulated by section 718, subdivision 4, of the charter). The learned counsel for appellant has annexed to his brief herein the rules of the board of appeals and of the board of standards and appeals regulating procedure, from which it appears that such board has properly dealt with these requirements. And in a particular case, where justice requires, it has, of course, power

to extend the time of appeal that the matter may be properly disposed of.

The party aggrieved thus having an appeal allowed him to a reviewing board of experienced experts, still has a final appeal to the courts. ·

Section 719-a of the Greater New York charter provides for a writ of certiorari to review the decision of the board of appeals.

Subdivision 1 of said section is as follows:

" 1. Petition. Any person or persons, jointly or severally aggrieved by any decision of the board of appeals upon appeal or review had under section seven hundred and nineteen, or any officer, department, board or bureau of the city, or the Industrial Commission of the Labor Department of the State, may present to the Supreme Court a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition must be presented to a justice of the Supreme Court or at a Special Term of the Supreme Court within thirty days after the filing of the decision in the office of the board, or its publication in the bulletin."

Subdivision 2 provides for the issuance upon such petition of a writ of certiorari directed to the board of appeals to review its decision and regulates the terms thereof.

Subdivision 3 provides for the form and contents of the return to the writ.

Subdivision 4 regulates the proceedings upon the return.

Subdivision 5 deals with the costs to be allowed.

Subdivision 6 gives the issue in such a proceeding preference over all other civil actions and proceedings.

This makes a clear and orderly procedure, whereby any person aggrieved may first appeal to the board of appeals, and then may test its action by certiorari.

As the relator failed to first exhaust its remedy by appeal to the board of appeals, it was not in a position to apply to the court for relief by way of mandamus, and its motion for a final order for a peremptory writ was properly denied. (*People ex rel. Walsh* v. *Kleinert*, 200 App. Div. 836.)

The order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.