In the Matter of the Application of SOCONY VACUUM OIL CO., INC., and SOBOL BROS. SERVICE STATIONS, INC., Petitioners, for an Order of Certiorari against HARRIS H. MURDOCK, Chairman, BERNARD A. SAVAGE and Others, Constituting the Board of Standards and Appeals, etc., Respondents.

Supreme Court, Special Term, New York County, December 10, 1937.

*Nordlinger, Riegelman & Cooper* [*Harold Riegelman, Jacob M. Dinnes* and *Leopold A. Halperin* of counsel], for the petitioners.

*Paul Windels, Corporation Counsel* [*Charles C. Weinstein* ana *Rose Schneph* of counsel], for the respondents.

SHIENTAG, J. This is a proceeding to review the action of the board of standards and appeals in affirming the building commissioner's denial of petitioners' application for a curb cut to allow access to their proposed gasoline service station. The petitioner Socony Vacuum Oil Co., Inc., is the owner of premises located at Nos. 102–104 East Thirteenth street and Nos. 127–135 Fourth avenue, in the borough of Manhattan. The petitioner Sobol Bros. Service Stations, Inc., is the lessee of these premises.

On or about June 2, 1936, the petitioners applied to the commissioner of buildings of the city of New York for a permit " to erect a salesroom, repair shop and gasoline service station, together with the necessary tanks and pumps," all of which would be situated wholly within the building line, and simultaneously informed the commissioner that " curb cuts, fill boxes and all necessary permits for work beyond the building line will be obtained before such work is started." On the same day the commissioner denied the application as follows: " The department considers the erection of a gasoline station on these premises hazardous to pedestrians."

Thereafter, and on or about June 16, 1936, the petitioners appealed to the board of standards and appeals. The matter came on to be heard by the board on July 14, 1936. The decision of the commissioner was reversed, the board holding that since the premises were located in an unrestricted district the Building Zone Resolution permitted the maintenance of a gasoline station there. The board said further that the commissioner of buildings had the power to deny a permit for curb cuts if in his opinion such cuts would be dangerous to pedestrians, and that its determination should not be construed to prejudice the action of the commissioner of buildings in any application which might thereafter be made to him for a curb cut.

Accordingly, on October 2, 1936, the petitioners filed with the commissioner of buildings an application for permission to lower the curb of the sidewalks on East Thirteenth street and Fourth avenue to provide two forty-two-foot curb cuts on each street in order that cars could cross the sidewalk to enter and leave the proposed gasoline service station. This application was denied on October 21, 1936. A second appeal was then filed with the board of standards and appeals on the ground that the decision of the commissioner was arbitrary, unreasonable and illegal. Hearings were had by the board on three separate occasions. The entire board made a personal inspection of the premises. The determination of the commissioner was affirmed.

By its decision the board held that section 407 of the Greater New York Charter, as amended by chapter 764 of the Laws of 1933, transferred the power theretofore exercised by the borough president over the issuance of curb cut permits to the commissioner of buildings, and that under subdivision e of section 184 of article 15 of chapter 23 of the Code of Ordinances the commissioner of buildings is vested with power to deny an application to lower the curb to provide a carriageway across a sidewalk when in his opinion the actual or intended use of such carriageway would endanger pedestrians.

The board did not stop with its affirmance of the decision of the building commissioner. It went further. Subdivision 6 of section 719 of the Greater New York Charter permitted it to " make such order, requirement, decision or determination as in its opinion ought to be made in the premises and to that end shall have all the powers of the officer from whom the appeal is taken." It thus considered the matter as though originally presented to it and concluded that to grant the application as demanded by petitioners would be extremely hazardous and against the public welfare and safety. The petitioners thereupon obtained an order of certiorari

by which they sought a review of the action of the board of standards and appeals, and to that end requested leave to take testimony pursuant to section 719-a of the Greater New York Charter. The board moved to dismiss the order of certiorari. The court at Special Term denied the motion and allowed the taking of additional testimony. The issues having been joined, the matter came on for trial, and it is now before the court for determination on the merits.

The relief sought, it is urged by petitioners, should be granted for the following reasons: (1) That the discretionary power formerly vested in the borough president was not transferred to the building commissioner, and the latter, therefore, could not deny petitioners' application when they complied with all the requirements of the building and fire department regulations; (2) assuming that the commissioner had discretionary power to withhold a permit, it was not in fact exercised in the instant case; (3) to deny a permit to petitioners is to deprive them of the use of their property without granting them just compensation for such deprivation, and is, therefore, unconstitutional; (4) in any event, the action of the building commissioner and the board was arbitrary, discriminatory and constituted a gross abuse of power.

(1) The power formerly exercised by the borough president with respect to granting permits for curb cuts was transferred *in toto* to the commissioner of buildings as a consequence of the enactment of section 407 of the Greater New York Charter, as amended by chapter 764 of the Laws of 1933. By that section each commissioner of buildings was granted " exclusive jurisdiction to examine and approve or disapprove all plans for buildings, structures and alterations and sub-surface structures, subject to and in accordance with the provisions of the Multiple Dwelling Law, the Building Code, the general rules and regulations of the Board of Standards and Appeals and the Board of Buildings," and had charge, " subject to the said laws, ordinances and regulations," of all surface and sub-surface structures within the curb line, including curb cuts and driveways, the coverings thereof and the appurtenances thereto, and " the issuance of all permits in reference thereto." The powers thus conferred upon the building commissioner were theretofore exercised by the borough president. The latter, by subdivision e of section 184 of article 15 of chapter 23 of the Code of Ordinances, could refuse a permit for a curb cut when the actual or intended use of the carriageway across the sidewalk would endanger pedestrians. I do not find that chapter 764 of the Laws of 1933, in fact, did or intended to repeal section 184 of article 15 of chapter 23 of the Code of Ordinances. There is no conflict between the two. The ordinance conferred the powers with respect to curb cuts on the

borough president. Chapter 764 of the Laws of 1933 conferred it on the building commissioner.

In construing these sections the court should be loathe to frustrate the legislative intendment because of seeming inconsistency. On the contrary, it should lend its aid to accomplish the desired end so that the public welfare will be served. If there was an intention to remove, limit or change in any manner the power of the building commissioner with respect to the subject under discussion, the new statute undoubtedly would have so provided. This conclusion is sustained by *Matter of Friedland* (249 App. Div. 623), where the commissioner of buildings granted a curb cut subject to certain conditions. The court below granted a peremptory order to the property owner directing the curb cut. On appeal the Appellate Division, reversing the court below, said: " The powers vested in the borough president by section 184 have devolved upon the commissioner of buildings as a consequence of section 407 of the Greater New York Charter, as amended by chapter 764 of the Laws of 1933." (Cf. *Baerenklau* v. *Thatcher*, 269 N. Y. 494.)

(2) I do not find that the building commissioner failed to exercise his own independent judgment in passing upon petitioners' application for a permit. True, there was a comment made by the borough president, but the record does not show that the action taken by the commissioner was commanded or dictated by the borough president.

(3) Petitioners claim that the denial of the permit interferes with the substantial property right of ingress and egress. Even if true, it is insufficient to override the command of the statute. In this case, however, the use is only contemplated — petitioners have not even begun to construct the gasoline station. However that may be, the commissioner of buildings, under subdivision e of section 184 of article 15 of chapter 23 of the Code of Ordinances, has the power to deny a permit for curb cuts when, in his opinion, the use of the carriageway would endanger pedestrians. (Greater N. Y. Charter, § 407, as amd. by Laws of 1933, chap. 764.) Such denial does not run counter to constitutional guaranties.

This power has not only been expressly conferred by statute but has been upheld by the authorities. In *Matter of Alurion Realty Corp.* v. *Levy* (271 N. Y. 552, affg. 246 App. Div. 601) an attempt was made to compel the borough president to issue a permit to lower the curb. A peremptory order was denied, and an alternative order granted. The respondent in that case, the borough president, urged that his refusal to issue the permit was justified by subdivision e of section 184 of article 15 of chapter 23 of the Code of Ordinances. The question submitted to the jury was: " Was the action of the

borough president in refusing to issue permits to the petitioner on the ground that a crossing of the curb by motor vehicles adjacent to petitioner's premises would prove a danger to pedestrian traffic arbitrary or unreasonable? " The jury found in the negative, and on its finding the court at Special Term dismissed the petition. The order was affirmed in the Appellate Division and in the Court of Appeals.

It was there asserted, as it is here, that the petitioner was entitled to a curb cut in order that it might make use of its premises in connection with the business of parking automobiles; that section 184 of article 15 of chapter 23 of the Code of Ordinances was confiscatory; that the borough president could not interfere with the substantial property right of ingress and egress. These arguments were rejected by the court.

Likewise, in *Zap* v. *Bruckner* (228 App. Div. 763; appeal dismissed, 254 N. Y. 542) a permit was sought to lower the curb in connection with a proposed gasoline service station. The bureau of buildings approved the specifications for a gasoline station but denied the curb cut. There, too, the same argument was made as the petitioners present here, and there again it was rejected.

(4) I do not find that the board acted in an arbitrary and discriminatory manner. The physical picture must be kept in mind. The premises here involved are located within one block of one of the busiest shopping centers in the city. Fourth avenue and Thirteenth street, the location of the proposed gasoline station, is in what is commonly referred to as the " bottle-neck " in the block south of Union Square, a very congested center of the city. The north-bound traffic along the Fourth avenue artery, which passes immediately adjacent to the proposed gasoline station, flows through this bottle-neck. Thousands of cars pass this section daily. There are already a number of gasoline service stations in the immediate vicinity.

In this situation it cannot be said that the board acted arbitrarily in finding that additional curb cuts in that section of the city would create a greater hazard to both vehicular and pedestrian traffic. There is no claim made that petitioners were discriminated against. The lessee already operates other stations nearby.

Neither may it be held that the board acted without sufficient evidence. Three hearings were held; the entire board visited the premises in question; the board analyzed the affidavits submitted by the petitioners regarding the numerical count made of pedestrian traffic and it also considered reports of the police department. After a full consideration it determined on the merits that a curb

cut in that section of the city would be a grave danger to pedestrians. It is urged in that connection that the police department report, of which petitioners had no knowledge, was improperly received and considered by the board.

It is true that the cases hold that the board of standards and appeals is not bound to follow the ordinary rules of evidence applicable to actions in the courts. (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *People ex rel. Broadway & 96th St. Realty Corp.* v. *Walsh*, 203 App. Div. 468.) Indeed, the cases go so far as to hold that the board may arrive at a determination on the basis of its own independent investigation. I feel, however, that the action of the board of standards and appeals in receiving the police department report after the investigation and hearings had concluded and not giving the petitioners an opportunity to analyze and meet it with additional testimony was unwise. It was this action on the part of the board that undoubtedly led my learned colleague at Special Term to rule that the petitioners should be afforded an opportunity to supply the additional evidence which it found to be necessitated by this police report.

While I do not suggest that the board should follow technical rules of evidence, nevertheless, if it is desired to avoid the taking of additional testimony provided for by section 719-a of the Greater New York Charter, it would be well for the board, before accepting and relying on reports submitted to it, to give parties in interest an opportunity to be heard. If it relies on its own investigation, it should incorporate a summary of the findings in the record before the hearings are closed. I say this not in the spirit of criticism in the present case, as I am convinced that the board was actuated by the best of motives. It must be remembered, nevertheless, that under the law great power has been placed in *quasi*-judicial bodies like the board of standards and appeals. Their findings of fact are in the most part conclusive and not to be interfered with by the courts. It is all the more important, therefore, that parties in interest have their full day in court before those tribunals and be given a complete opportunity to meet all the issues there presented.

The fact that permits had been granted in other instances does not show that the board was arbitrary in the instant case. (See *Chizner* v. *Walsh*, 236 App. Div. 731; affd., 261 N. Y. 707.) I cannot find from the record that the board acted in an unreasonable manner. Therefore, the court is without power to interfere with the discretion exercised by the board of standards and appeals. If it did so, it would be substituting its discretion and its judgment

for that of the board. (See *People ex rel. Werner* v. *Walsh*, 240
N. Y. 689; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 id.
280; *People ex rel. Arseekay Syndicate* v. *Murdock*, 265 id. 158;
*People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 id. 73.)

Accordingly the motion to vacate the order of certiorari and to
dismiss the petition is granted.