NICHOLAS J. FLORENTINE ET AL. v.
TOWN OF DARIEN ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 7—decided June 7, 1955

*Pierce J. Gerety,* for the appellants (defendants).

*John Keogh, Jr.,* with whom, on the brief, was *Alfred W. Burkhart,* for the appellees (plaintiffs).

BALDWIN, J. This is an appeal from a judgment of the Superior Court enjoining the enforcement of a regulation of the town plan and zoning commission of Darien rezoning the area in which lands owned and controlled by the plaintiffs are located. As we view the case, the sole question is whether the court was correct in issuing an injunction on the ground that the regulation was unconstitutional.

The essential facts found by the trial court, with such corrections as are warranted, are as follows: Darien is predominantly a residential town with a population in 1953 of 13,300. It is bisected by four tracks of the main line of the New York, New Haven and Hartford Railroad, which runs easterly and westerly. The Boston Post Road crosses the town from the southwest to the northeast and passes under the railroad at what has long been the center of the main business area. The railroad station is a short distance west of this underpass. The business area extends along the Post Road on each side of the underpass. The plaintiff Nicholas J. Florentine owns a parcel of vacant land bounded north on West Avenue, 504.37 feet; east on land of the railroad company, 78.80 feet; south on land of the railroad company, 497.06 feet; and west on Leroy Avenue, 219.59 feet. The railroad station is located on land

adjoining this parcel on the east. The main-line tracks lie south of the parcel and are separated from it by other land of the railroad. In 1948, Florentine leased his land to the plaintiff Charles A. Koons and Company, a copartnership,[1] hereinafter referred to as Koons, for a term of fifteen years at a total rental of $32,000, with the privilege of renewal for a further period of fifteen years. The lease gives Koons an exclusive option to purchase for $32,000 at any time during the last ten years of the term. In December, 1953, subsequent to the commencement of the trial of this action, Koons purchased 10,000 square feet of the railroad property adjoining the Florentine property on the south. As a result, the combined easterly boundary of the Florentine land under lease and option to Koons and the parcel purchased by Koons is 123.94 feet where the tract adjoins the railroad station property.

On March 18, 1952, the zoning commission of Darien created two classes of business zones, A and B. On September 16, 1952, it changed from business B to business A the zone of the small triangular area in which the plaintiffs' lands are included. The properties across Leroy Avenue on the west and West Avenue on the north are middle-class residential, zoned residence B. On the date the commission reclassified the triangular area containing the plaintiffs' properties, it reclassified to business A other areas in the town. Some of these, like the plaintiffs' properties, are located in the business center of Darien. They are not adjacent to, but

---

[1] The partnership of Charles A. Koons and Company, while not technically a plaintiff in this action, is herein referred to as a plaintiff because the nominal coplaintiff, Charles A. Koons, is suing on behalf of the partnership.

are not far distant from, the plaintiffs' lands.

Prior to March 18, 1952, four classes of residential zones and a business zone, with appropriate regulations for each, had been established by the commission. In 1951, there were 121 separate business establishments situated near the railroad underpass. A substantial number of Darien residents commute daily to New York. These people, and others who work in the center of the town, pre-empt most of the parking space in the business area. Space for parking is very limited. In 1948, the zoning commission amended the zoning regulations to make provision for off-street parking. In 1950, it engaged the services of a professional planning engineer and undertook a review of the entire zoning plan and regulations and of the factors affecting the growth and economic development of the town. It is unnecessary to relate the details of this review. It dealt with traffic and parking problems, the rapid growth in population, land uses, the dollar value of retail business done by residents of Darien, property values in the business areas and tax revenues, as they all bore upon the need for, and nature of, planning and zoning for the future. The review indicated that the population of the town would continue to grow and that the number of automobiles would increase more rapidly than the population, causing traffic and parking problems to become worse unless remedial steps were taken. The commission concluded that a lack of adequate parking facilities in the business area was causing traffic congestion in the business center, inconveniencing citizens generally, driving business elsewhere, depreciating the value of business properties, lowering property tax revenues, and affecting the employment of nearly 500 people working in the 121 businesses in the business

area.[2] The amendment of the zoning map and regulations of which the plaintiffs complain and which created business A and B zones and prescribed the uses and building requirements therefor was adopted for the purpose of alleviating the problem. The regulations for a business A zone are set forth in full in a footnote.[3] Briefly, they fix the minimum size of a lot at 1 acre; the minimum width at 100 feet; the minimum depth at 150 feet; the minimum front-yard depth at 30 feet; the minimum rear-yard depth at 50 feet; and the maximum area covered by buildings at 20 per cent of the lot. Darien Zoning Regs., § III-A (1952).

The plaintiffs' properties are adapted to business, but not to residential, uses. They are suitable for a shopping center. This would require a depart-

---

[2] See A-332 Rec. & Briefs 327-32.

[3] "SECTION III-A REGULATIONS CONTROLLING BUSINESS 'A' ZONES (Planned Unit Business Development)

"1. USES PERMITTED
    a. Stores and shops for the conduct of retail businesses, banks, restaurants, personal service shops (such as barber, beauty, or tailor shops) and parking space for motor vehicles.
    b. All business operations and related storage, including storage of trucks and other motor vehicles, must be in permanent structures.
    c. Cleaning, dyeing or washing of wearing apparel, household effects or similar items, except where flammable liquids are employed.
    d. Residence.

"2. MINIMUM SIZE OF LOT
    One Acre.

"3. MINIMUM DIMENSIONS
    Width—100 feet.
    Depth—150 feet.

"4. MAXIMUM COVERAGE BY BUILDINGS
    20% of the lot.

"5. MAXIMUM HEIGHT OF BUILDINGS
    2 stories or 30 feet.

"6. MINIMUM YARDS
    Side Yards—None, but if provided must be at least 4 feet,

ment store or supermarket as a so-called "leader" to attract smaller businesses to adjacent stores on the same property. A leader needs at least 10,000 square feet of area on the ground floor, which, under the regulations for the business A zone, would not leave enough space for adjacent stores. It would not be financially practical to construct a group of small stores without a leader. The lands are low and wet, making a building with a basement unpractical. A two-story building would likewise not be practical. A minimum building area of approximately 25,000 square feet would be needed to make building on the plaintiffs' land financially feasible. Under the present regulations, only 14,718 square feet could be devoted to a building on the Florentine parcel. A single-story building erected on this parcel under present restrictions could be expected to yield a return of substantially more than 8 per cent on the money invested, and a two-story building would

except that where access to parking space is provided through a side yard the yard shall be at least 25 feet in width.

Front Yard—30 feet, but if parking is to be provided in the front yard the set back shall be at least 55 feet.

Rear Yard—50 feet, except where rear yard abuts a residential district, in which case the minimum rear yard shall be 75 feet.

"7. OFF-STREET PARKING

a. Parking space shall be provided in accordance with the standards of the Zoning Regulations.

b. No parking shall be built or maintained within 25 feet of any residential zone and this 25-foot strip shall be suitably screened with planting.

c. No parking shall be so located in front of a building that cars enter it across a sidewalk, except at points of entrance and exit approved as provided in Paragraph 10 below.

d. Where possible, arrangements should be made with adjoining properties so that parking areas may be provided with jointly used points of entrance and exit, thereby reducing or eliminating the need for such entrance and exit points in side yards."

yield substantially more than 12 per cent. In constructing a modern shopping center, the rule of thumb commonly used is 22 per cent of the land area for the building, 60 per cent for parking, and 18 per cent for services, loading, walls and walks. The modern trend is toward more parking area. Some experts agree that a ratio of three or four to one between parking space and floor area, including basement and all floors, is desirable. The plaintiffs' land is suitable, and has been considered, as a site for a post office. If it was so used, the value of the remaining land owned and controlled by the plaintiffs would be substantially increased. The Florentine property zoned for business A is worth approximately $35,000. If it was zoned for business B, it would be worth $75,000 to $100,000.

The plaintiff Florentine petitioned the zoning commission to rezone his property to business B, but the commission denied the petition. The plaintiffs have not requested a variance of the regulations as they apply to their lands. On these facts, the trial court concluded that the action of the commission as it applied to the plaintiffs' lands was invalid because it was confiscatory and constituted a taking of the plaintiffs' property without due process of law in violation of the federal and state constitutions. The court found further that the plaintiffs had followed appropriate legal procedure to test the validity of the action of the commission.

The zoning commission of the town of Darien was empowered by special act in 1925 to establish zoning in that town. 19 Spec. Laws 922 (as amended, 26 Spec. Laws 1152). Zoning is an exercise of the police power of the state. Zoning regulations, to be valid, must have a rational relation to the health, welfare, safety and prosperity of the community.

*State* v. *Hillman,* 110 Conn. 92, 100, 105, 147 A. 294; *Strain* v. *Mims,* 123 Conn. 275, 286, 193 A. 754; *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112. Where such a rational relation exists and the power is reasonably exercised, the public interest is supreme and private interest must give way. *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 732, 97 A.2d 562; *Bartram* v. *Zoning Commission,* 136 Conn. 89, 96, 68 A.2d 308; *Windsor* v. *Whitney,* 95 Conn. 357, 366, 111 A. 354. Under such circumstances, loss occasioned to some individual property owner is not ordinarily sufficient to render zoning regulations invalid. *Strain* v. *Mims,* supra; *Osborn* v. *Darien,* 119 Conn. 182, 185, 175 A. 578; *State* v. *Hillman,* supra, 104.

The power of regulation is not limitless. It cannot be exercised in a confiscatory or arbitrary fashion. *State* v. *Hillman,* supra, 105; *State* v. *Heller,* 123 Conn. 492, 497, 196 A. 337; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 440, 86 A.2d 74; *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 388, 47 S. Ct. 114, 71 L. Ed. 303. Darien's traffic problems are urgent. They are burdensome and inconvenient to many citizens and property owners. They gravely affect the future welfare of the whole community. They demand drastic measures. Zoning commissions are necessarily vested with broad discretionary powers. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 709, 88 A.2d 538; *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668. In this case that power appears to have been exercised after careful study and mature consideration. True, the effect of the regulation has been to interfere seriously with the use to which the plaintiffs might put their properties. In deciding, however, whether the provisions

concerning business A zones as they apply to the plaintiffs' properties are so unreasonable and arbitrary as to be confiscatory, and hence, unconstitutional, we must look beyond the single provision complained of and examine the entire zoning ordinance of Darien.

The power to zone, using that term in its broad sense, comprehends the power (1) to create building zones and to adopt zoning regulations, and (2) to apply them, when questioned in a given situation, in harmony with their general purpose and intent so that unusual difficulties and unnecessary hardships are avoided. The former power is entrusted to a zoning or planning commission, the latter power to a board of appeals. The regulation regarding business A zones, when considered in connection with other provisions of the zoning ordinance of Darien, will not necessarily be applied to the plaintiffs' land absolutely and literally. The zoning ordinance and the charter provide for a zoning board of appeals to which an affected property owner may apply for relief. Darien Zoning Regs., § XV (1952); 26 Spec. Laws 1153, § 5. The board of appeals has all the powers conferred upon such boards by General Statutes, § 842. An appeal from its decision lies to the Court of Common Pleas. Cum. Sup. 1953, § 286c. Zoning boards of appeal have the power to vary the application of zoning by-laws, ordinances or regulations in harmony with their general purpose and intent, where a literal enforcement would result in exceptional difficulty or unusual hardship, so that substantial justice may be done. General Statutes, § 842;[4] Darien Zoning Regs., § XV (10) (1952).

---

[4] "Sec. 842. POWERS AND DUTIES OF BOARD OF APPEALS. The zoning board of appeals shall have the following powers and duties:

A board of appeals is indispensable to the zoning process both from the constitutional and the practical standpoint. See Metzenbaum, Law of Zoning, p. 252. It is primarily an administrative agency. *Executive Television Corporation* v. *Zoning Board of Appeals,* 138 Conn. 452, 455, 85 A.2d 904; *Perdue* v. *Zoning Board of Appeals,* 118 Conn. 174, 178, 171 A. 26; 2 Yokley, Zoning Law & Practice (2d Ed.) p. 314. In creating building zones and in adopting pertinent zoning regulations, zoning commissions are required to deal with established and growing communities. See *Lathrop* v. *Norwich,* 111 Conn. 616, 620, 151 A. 183; Metzenbaum, op. cit., p. 254. It is inevitable that a zoning regulation permitting certain uses of land and proscribing others will adversely affect individual rights in some cases. The essential purpose of a board of appeals is to deal with these cases by furnishing elasticity in the application of regulatory measures so that they do not operate in an arbitrary or confiscatory, and consequently unconstitutional, manner. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 635, 109 A.2d 256; see 1 Yokley,

(1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any by-law, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions upon which it is required to pass by the specific terms of the zoning by-law, ordinance or regulation; and (3) to determine and vary the application of the zoning by-laws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated a literal enforcement of such by-laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured."

op. cit., § 120. "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." *Bain Peanut Co.* v. *Pinson,* 282 U.S. 499, 501, 51 S. Ct. 228, 75 L. Ed. 482. The purpose of boards of appeal, as aptly stated by Judge Hinman, is "to keep the law 'running on an even keel.'" *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 139, 154 A. 343; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 22, 157 A. 273; 1 Yokley, op. cit., p. 295, § 120. They are endowed with a liberal discretion and their action is subject to review by the courts to determine whether it has been exercised in an unreasonable, arbitrary or illegal manner. *Executive Television Corporation* v. *Zoning Board of Appeals,* 138 Conn. 452, 455, 85 A.2d 904; *Talmadge* v. *Board of Zoning Appeals,* 141 Conn. 639, 642, 109 A.2d 253; see *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 7, 68 A.2d 152; *Hertzsch* v. *Zoning Board of Appeals,* 137 Conn. 599, 603, 79 A.2d 767.

In considering the constitutionality of the regulation concerning business A zones, we must assume that the commission in enacting it recognized that it might fit some situations badly and require adjustment by the board of appeals. Arbitrarily and unreasonably applied, the regulation could be confiscatory and hence unconstitutional. Properly adjusted within the limits of the powers of a board of appeals, it need not be. See Baker, Legal Aspects of Zoning, p. 106; Metzenbaum, Law of Zoning, p. 253. In short, until the function of the board of appeals has been called into play, it cannot be said that the power to zone has been fully and finally exercised. The plaintiffs have not sought the relief which, under the zoning ordinance, is appropriate to their complaint and which the board of appeals is de-

signed to furnish. The regulatory provisions of the ordinance have not operated in toto until the board of appeals has had the opportunity to exercise its powers to temper the regulations for business A zones as they apply to the peculiarities of the plaintiffs' lands. In this particular case, until the board of appeals has functioned as contemplated by the statute, it cannot be said that the plaintiffs have been finally denied the reasonable or proper use of their property. They have simply been prevented from using it as they wish to use it. It is axiomatic that all private property is held subject to the lawful exercise of the police power of the state. *Warner* v. *New York, N.H. & H.R. Co.*, 86 Conn. 561, 565, 86 A. 23; *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 A. 354.

This brings us to the question whether the trial court was correct in granting an injunction in this action. The plaintiff Florentine's petition to the commission to rezone his property to business B was denied. Neither of the plaintiffs has invoked the power which the ordinance specifically provides to remedy the very kind of complaint which they make against this regulation. The Florentine property under lease to Koons and the additional 10,000 square feet purchased by Koons from the railroad company comprise nearly two acres. The dimensions are such that necessary variations of front-, side- and back-yard requirements could easily be made. The rule of thumb commonly used in constructing a shopping center is 22 per cent for the building, 60 per cent for parking, and 18 per cent for services, loading, walls and walks. The modern trend is toward even more parking area. Some experts agree that a ratio of three or four to one between parking space and floor area in a shopping

center, including basement, ground and other floors, is desirable, because most customers arrive in automobiles. We conclude that the plaintiffs are not entitled to seek injunctive relief until they have been granted or denied a variance and the action of the zoning authorities has thus become complete and final. *People* v. *Calvar Corporation*, 286 N.Y. 419, 421, 36 N.E.2d 644, 136 A.L.R. 1376; *People ex rel. Broadway & 96th Street Realty Co.* v. *Walsh*, 203 App. Div. 468, 474, 196 N.Y.S. 672; *Cliffside Park Realty Co.* v. *Cliffside*, 96 N.J.L. 278, 279, 114 A. 797; *Home Fuel Oil Co.* v. *Glen Rock*, 118 N.J.L. 340, 347, 192 A. 516; *Provo City* v. *Claudin*, 91 Utah 60, 68, 63 P.2d 570; Metzenbaum, Law of Zoning, p. 257; 1 Yokley, Zoning Law & Practice (2d Ed.) § 122; 42 Am. Jur. 573 § 194, 580 § 197; see *McNish* v. *American Brass Co.*, 139 Conn. 44, 53, 89 A.2d 566.

The plaintiffs raise the question whether by seeking a variance from the board of appeals they would be thereafter foreclosed from challenging the constitutionality of the action of the zoning commission. In this case the plaintiffs are not attacking the validity of the ordinance as a whole, but only the regulations for business A zones as applied to their land. We have said that a party cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality. *Holley* v. *Sunderland*, 110 Conn. 80, 85, 147 A. 300; *Strain* v. *Zoning Board of Appeals*, 137 Conn. 36, 38, 74 A.2d 462.[5] This rule would have no application to an independent proceeding challenging the constitutionality of a zoning regula-

[5] Other zoning cases discussing this question are: *Lathrop* v. *Norwich*, 111 Conn. 616, 626, 151 A. 183; *Chudnov* v. *Board of Appeals*, 113 Conn. 49, 57, 154 A. 161; *Piccolo* v. *West Haven*, 120 Conn. 449, 455, 181 A. 615.

tion or ordinance. Furthermore, a distinction should be drawn between the case where the entire ordinance, or the enabling act under which it was adopted, is questioned and the case, such as the one at bar, where a particular and specific action of the board in enacting an amendment to the regulations concerning business zones is challenged. In the latter situation, it could not be said that a complainant had waived any right by proceeding with the administrative remedies available to him, because in doing so he has only sought the full and complete operation of the zoning ordinance. See *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 252, 83 A.2d 201.

The rule laid down in *Coombs* v. *Larson,* 112 Conn. 236, 152 A. 297, would have no application where a party had sought a variance under a zoning ordinance. In that case the plaintiff, after the decision in *State* v. *McCook,* 109 Conn. 621, 147 A. 126, in which we held a special act providing for the acquisition of land for a tuberculosis sanatorium invalid because it was signed by the governor more than three days after the final adjournment of the General Assembly, attempted to challenge the public and special acts under which zoning had been established in the town of West Hartford as invalid for the reason advanced in the *McCook* case. Previous to that decision the plaintiff had petitioned the zoning commission of West Hartford for a change of zone affecting her property but had failed to appeal from the commission's denial of her petition. Neither in that proceeding nor in any other had she claimed any irregularity in the adoption of the zoning legislation or the ordinance. We held (p. 246) that public and private rights had intervened which would be prejudiced if the legislation and ordinance,

at the plaintiff's instance, should be declared void and that her failure to avail herself promptly of a fair opportunity to challenge the validity of the legislation before the *McCook* decision constituted a waiver. This decision was necessary in order to prevent an attack upon other legislation which had long been accepted as regularly adopted and upon which public and private rights had been based and to sustain the action of the General Assembly in validating legislation which might otherwise have been attacked subsequent to the *McCook* decision.

If the plaintiffs are denied relief by the zoning board of appeals, the action of the zoning authorities has then become final and complete. The plaintiffs are still in a position to appeal from the decision of the zoning board of appeals or to challenge by direct attack in an independent proceeding the constitutionality of the regulation, or indeed, of the entire ordinance or law. "We have never held that resort to an appeal authorized by law or ordinance in itself precludes an attack upon the validity of that law in a subsequent independent proceeding." *National Transportation Co.* v. *Toquet*, 123 Conn. 468, 478, 196 A. 344; see *Spector Motor Service, Inc.* v. *Walsh*, 135 Conn. 37, 42 n., 61 A.2d 89; *Connecticut Baptist Convention* v. *McCarthy*, 128 Conn. 701, 25 A.2d 656; *Women's Kansas City St. Andrew Society* v. *Kansas City*, 58 F.2d 593, 606; *Clark* v. *Greenlee*, 287 Ill. App. 474, 481, 5 N.E.2d 278; *Baddour* v. *Long Beach*, 279 N.Y. 167, 177, 18 N.E.2d 18. In *Connecticut Baptist Convention* v. *McCarthy*, supra, the plaintiff appealed to the Court of Common Pleas from a denial by the mayor of the city of New Haven of an application for a certificate of approval of a site for the sale of gasoline. The court, upon the stipulation of the parties, reserved

the question of the constitutionality of the statute for the advice of this court. General Statutes § 7967; Practice Book §§ 469, 470. We considered this reservation even though the case was originally an appeal taken under the statute being challenged.

It might be argued that, if the plaintiffs are required to seek the action of the board of appeals before they are entitled to injunctive relief, they might also be required to pursue the remedies provided by the zoning law (Cum. Sup. 1953, § 286c) and take an appeal to the Court of Common Pleas. The answer to that argument is that the zoning commission and the board of appeals act in a legislative or an administrative capacity, and after they have both functioned the zoning powers have been fully exercised. The Court of Common Pleas, on appeal, acts, and can only act, in a judicial capacity. It has no legislative or administrative powers. *Spencer's Appeal,* 78 Conn. 301, 305, 61 A. 1010. The statement in *Hutchison v. Board of Zoning Appeals,* 138 Conn. 247, 252, 83 A.2d 201, is not contrary to the position taken in this opinion. *Chudnov v. Board of Appeals,* 113 Conn. 49, 57, 154 A. 161, is cited in that case in support of the proposition that when an appellant has sought some advantage under the ordinance, such as a permit or a variation, he cannot attack the validity of the ordinance. In both the *Chudnov* and *Hutchison* cases appeals had been taken, and the cases go no further than to hold that in such a case the constitutional validity of the ordinance cannot be attacked.

We conclude that until the plaintiffs have sought and been either granted or denied a variance by the zoning board of appeals they are not in a position to seek injunctive relief on the ground of the unconstitutionality of the action of the zoning authorities.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendants.

In this opinion the other judges concurred.