THE DEFOREST AND HOTCHKISS COMPANY *v.* PLANNING
AND ZONING COMMISSION OF THE TOWN OF MADISON

THE DEFOREST AND HOTCHKISS COMPANY *v.*
TOWN OF MADISON ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued November 6—decided December 15, 1964

*William M. Mack,* with whom, on the brief, was *John W. Barclay,* for the appellant (plaintiff in each case).

*Philip N. Costello, Jr.,* corporation counsel, and *Lawrence R. O'Brien,* for the appellees (defend· ants).

## I

KING, C. J. These two cases were tried together. The first, hereinafter referred to as the appeal, was an appeal by the plaintiff from the refusal of the planning and zoning commission of Madison, hereinafter referred to as the commission, to change, from a residential to an industrial zone, the portion of the plaintiff's property which extends north from the railroad for a distance of 300 feet.

The second case, hereinafter referred to as the action, was a suit for a declaratory judgment which the plaintiff instituted several months after the appeal, and during its pendency. The action was brought against the commission and the town of Madison and sought a judgment declaring that the zoning regulations were illegal and void as to the plaintiff's property and also injunctive relief against the enforcement of the zoning regulation placing the plaintiff's property in a residential zone. This relief was claimed on the ground that the residential zoning classification, from its inception in 1953 and up to and including the present time, continuously has been, and still is, as to this plaintiff, illegal and void as being in violation of the fourteenth amendment to the constitution of the United States as a taking of the plaintiff's property without due process of law.

In each case, a decision adverse to the plaintiff was rendered and an appeal taken to this court. Although separate records and briefs were filed, the appeals were argued together in this court. We first consider the appeal.

## II

The plaintiff is a large concern, with its main plant in New Haven, primarily engaged in the busi-

ness of selling lumber and building materials. In 1927, it established a branch plant in Madison on a tract of land of about four acres bounded on the south by the railroad, from which a spur track was built, and on the north by the Boston Post Road. In conducting its business, it stored lumber and building materials in sheds and out of doors, engaged in sawing and other lumber processing activities, and maintained a salesroom on the Boston Post Road.

This general section of Madison is called the East River section and was first zoned in 1953. Property north of the railroad, including that of the plaintiff, was placed in residential zones, but property south of the railroad was placed in the light industrial zone, which is the least restrictive zone in Madison.

The plaintiff has operated its business successfully since 1953 as a nonconforming use. On June 27, 1961, it made application to the commission for an extension of the light industrial zone in a northerly direction from the railroad for a distance of 300 feet. The effect of this extension, if it had been granted, would be to place in the light industrial zone the portion of the plaintiff's property which was within 300 feet of the railroad and northerly of it. In other words, a light industrial spur of land would be extended into the residential zones. See cases such as *Woodford* v. *Zoning Commission,* 147 Conn. 30, 33, 156 A.2d 470. After a public hearing held on October 19, 1961, the commission, on the same day, unanimously denied the petition. From this denial the plaintiff took this appeal. At the hearing, a number of persons spoke against the proposed change of zone, and petitions opposing the change, signed by citizens of Madison, were also presented. The gist of the objections was that to

grant the change would throw the property open to the most objectionable uses permitted in the town.

The plaintiff gave two main reasons for seeking the change of zone. The first and primary reason was that, although the business was in a sound and prosperous condition, the plaintiff needed liquid assets and had decided to include the Madison property in a mortgage covering substantially all of its real estate, and it had found that lending institutions would not accept large mortgages on industrial property operating as a nonconforming use. Consequently, in order to realize the full value of the Madison property as mortgage security, the plaintiff claimed that the property must be placed in a light industrial zone. The second reason was that the plaintiff wished to be free to enlarge upon or change its present operations, especially in the area of the manufacture and sale of prefabricated sections of buildings in accordance with a modern trend in the industry, and such an enlargement or change might be prohibited under the zoning regulations as an extension or change of a nonconforming use. See cases such as *Guilford* v. *Landon,* 146 Conn. 178, 180, 148 A.2d 551; *State* v. *Perry,* 149 Conn. 232, 234, 178 A.2d 279; *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 443, 190 A.2d 594; *Lunt* v. *Zoning Board of Appeals,* 150 Conn. 532, 539, 191 A.2d 553.

The commission gave four reasons for denying the zone change. As far as the reasons themselves are concerned, if any one of them supports the action of the commission, the plaintiff must fail in its appeal. *Senior* v. *Zoning Commission,* 146 Conn. 531, 534, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145. One of the reasons was that "[t]he granting of this request

would not conform to the comprehensive plan." This reason was adequate, if factually sound. General Statutes § 8-2; *Senior* v. *Zoning Commission,* supra, 533. The comprehensive plan for zoning in Madison is found in the zoning regulations themselves, and it is quite clear that this plan called for a light industrial classification of land south of the railroad and a residential classification of land north of the railroad. While the plaintiff criticizes the defendant for not placing land on both sides of the railroad in a light industrial zone, on the ground that any land near a railroad is per se "blighted" for residential purposes, a zoning commission's decision cannot be upset by a court merely because the court feels a different classification might have been preferable. "The burden was on the plaintiff to prove that the action of the commission amounted to an illegal abuse of its power." *Senior* v. *Zoning Commission,* supra.

Another reason given by the commission was that raised by most of the objectors, that is, that to grant the change would throw open the rezoned property to the most objectionable uses permissible in Madison. *Woodford* v. *Zoning Commission,* 147 Conn. 30, 33, 156 A.2d 470. This reason was also adequate and was obviously factually sound.

The real claim of the plaintiff before the commission was that, at the inception of zoning, its property was actually devoted to an industrial use by a prosperous, going concern, and that consequently the zoning regulations, in order to be reasonable and valid, should have zoned the property in accordance with that use, since otherwise the property would be depreciated in value as a nonconforming use not subject to business expansion through enlargement or the adoption of improved manufacturing proc-

esses. The mere statement of the proposition is a demonstration of its invalidity. In a town such as Madison, which has grown through a long period of years, numerous nonresidential uses can usually be found in the old residential sections. They could be found in Madison along the Boston Post Road, as pointed out by the plaintiff. Since 1953, presumably in reliance on the zoning classification, numerous residences have been built near the plaintiff's property in the residential zones. Under the plaintiff's theory, a series of small, disconnected zones should have been created, each of a character such as to conform to the existing use at the inception of zoning, at least if that use involved a going commercial enterprise. Such a system would amount to establishing zones in accordance with actual, existing individual property uses and would be contrary to any permissible comprehensive plan. *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444. Moreover, it would forever do away with any possibility of ultimately eliminating nonconforming uses, which is an indisputable goal of zoning. *Woodford* v. *Zoning Commission,* supra.

The commission's denial of the application for a change of zone was a reasonable, if not the only reasonable, action permissible under the facts as presented to the commission. This determination would be dispositive of these proceedings adversely to the contentions of the plaintiff were it not for the procedural problems into which the plaintiff has plunged this litigation by the institution of the action.

### III

No hint of any claim that the zoning classification, as applied to the plaintiff's property, was so con-

fiscatory as to be unconstitutional was given the commission at the hearing before it. Nor was any such claim raised in the pleadings incident to the appeal taken to the Court of Common Pleas. Only long afterwards, upon the institution of the action, was unconstitutionality first claimed.

It is difficult to conceive of a stronger reason for the commission's granting the request for a change of zone than proof that the existing zoning classification, in its effect on the plaintiff's land, was so arbitrary and unreasonable as to be confiscatory. See *Del Buono* v. *Board of Zoning Appeals*, 143 Conn. 673, 678, 124 A.2d 915; *Suffield Heights Corporation* v. *Town Planning Commission*, 144 Conn. 425, 429, 133 A.2d 612. No reason appears why this claim should not have been made before the commission and, if improperly rejected or ignored, assigned as a ground of appeal to the Court of Common Pleas. *Vartelas* v. *Water Resources Commission*, 146 Conn. 650, 653, 153 A.2d 822; *Dooley* v. *Town Plan & Zoning Commission*, 151 Conn. 304, 308, 197 A.2d 770.[1]

---

[1] Dicta in *Florentine* v. *Darien*, 142 Conn. 415, 426, 115 A.2d 328, might lead to a conclusion that the plaintiff could not have raised this claim in an appeal from the action of the commission until the plaintiff had first exhausted the remedy of applying to the zoning board of appeals for relief in the form of a variance. Such a conclusion obviously would be unsound. The same claim could be made in any appeal from a zoning commission's refusal to change a zone to a less restrictive one. If such a claim were sustained, it would render inoperative the provisions of §§ 8-9 and 8-10 of the General Statutes which expressly allow an appeal from the action of any zoning commission. *Sullivan* v. *Town Council*, 143 Conn. 280, 286, 121 A.2d 630. Certainly the fact, if it had been a fact, that the zoning classification was so arbitrary and unreasonable, as applied to the plaintiff's property, as to be confiscatory and hence void as unconstitutional could not lessen the rights which the plaintiff would have had if the classification, although arbitrary and unreasonable, had fallen short of the confiscatory character necessary to render

Indeed, it is open to serious question whether as matter of law the plaintiff would be entitled either to a declaratory judgment or to ancillary injunctive relief in the face of the apparently adequate remedy open to it of including the foregoing claim both in its application for a change of zone and in its appeal from the commission's refusal to grant that change. *Holt* v. *Wissinger,* 145 Conn. 106, 116, 139 A.2d 353. Certainly, the unnecessary use of multiple actions in this day of crowded dockets is not to be encouraged. See Practice Book § 309 (c) and cases such as *Redmond* v. *Matthies,* 149 Conn. 423, 428, 180 A.2d 639.

But even if a declaratory judgment action had been appropriate, the instant action was inadequate for lack of any order of notice, at least to owners of residence properties who would be adversely affected by the granting of the plaintiff's claims for relief. Practice Book § 309 (d) and cases such as

it unconstitutional. The *Florentine* case was concerned with the necessity of exhausting available administrative remedies before resorting to a declaratory judgment action or to injunctive relief. *Florentine* v. *Darien,* supra, 428. The decision is but an application of the general rule that neither a declaratory judgment nor injunctive relief should be granted where there is available another more appropriate remedy. *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483. Whether the rule, as applied in the *Florentine* case, could have been successfully invoked by the defendants as an additional defense to the instant action we need not determine, since their answer, although containing other special defenses, contained no allegations raising this particular defense.

The appeal, of course, was merely an attack on the zoning classification given the plaintiff's particular property. It was not an attack on the ordinance as a whole. The plaintiff, by appealing, would not have adopted a position inconsistent with its claim of unconstitutionality. *Florentine* v. *Darien,* supra, 428; *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 717, 184 A.2d 42. There was no claim that the residence classification was void, apart from its application to the plaintiff's property, as there was in cases such as *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 93, 111 A.2d 552.

*National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344.

We have decided, however, without in any way condoning or approving its institution, or even its adequacy as matter of law, to take the action as treated by the parties and the court below and briefly to consider the constitutional claim therein raised. *Anselmo* v. *Cox,* 135 Conn. 78, 79, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405. In large part, the claim has been disposed of by what has already been said as to the appeal. The contention that the plaintiff's land has been confiscated and rendered unsalable is without merit. The most that the plaintiff could claim to have established was that the value of its property had been substantially lessened by being placed in a residential zone. The court found that its value would be about $176,000 if it were in a light industrial zone, and that if all the buildings were removed, the land alone, considered for residence purposes only, would have a value of about $14,000. There was, however, no evidence that the business was unsalable for continuance as a nonconforming use so as to render the buildings unusable and thus to necessitate the sale of the land, alone, as a conforming use. Nor was there any evidence as to the extent to which the value of the business, or of the property, had been, or now was, substantially lessened by reason of its having been placed in a residential, rather than in a light industrial, zone.

The burden of proving the unconstitutionality of a legislative enactment, even though of local origin, is not a light one. Of course, the value of the plaintiff's property would almost certainly be enhanced by placing it in an industrial zone where it would be available for the most objectionable uses permis-

sible in Madison. This would also be true of any other nonconforming industrial use in a residential zone. But such a fact would not justify overthrowing the commission's zonal classification as unconstitutional. The maximum possible enrichment of a particular landowner is not a controlling purpose of zoning. *Senior* v. *Zoning Commission,* 146 Conn. 531, 535, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145. The same may be said of the maximum possible enhancement of the value of a piece of property for sale or mortgage security purposes. The claim of unconstitutionality is without merit, and the court did not err in deciding the action in favor of the defendants, if, as we have assumed, it was entitled to be decided on the merits at all.

There is no error in either case.

In this opinion the other judges concurred.