[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the Tolland Planning and Zoning Commission (Commission) which granted the plaintiffs a special permit (R-98) to conduct a quarry operation on 10.5 acres of land, of which 5.5 acres was found to be a nonconforming use.
The appeal is specifically directed at the Commission's finding that only 5.5 acres of the approximately 142 acres owned by the plaintiffs is a nonconforming use. The issuance of the special permit is not being appealed.
The plaintiffs assert three separate grounds of appeal, as follows:
1. The Commission unlawfully rejected the plaintiff's evidence that approximately forty-two (42) acres had been physically appropriated for quarry activity prior to the adoption of zoning regulations, in that in rejecting said evidence it relied on an opinion given by the Town Attorney (R-69) which opinion is contrary to law.
2. The Commission relied on evidence of quarry activity which took place after zoning regulations were adopted.
3. The Commission failed to recognize that a quarry operation has characteristics peculiar to its operation and, in essence, it did not consider that areas, while not actually being excavated, had been appropriated for quarry use.
The law of this case is found in an action for a Declaratory Judgment brought by the present plaintiffs (Burgundy Hills). See Burgundy Hills Associates, et al vs. Town of Tolland, Judicial District of Tolland, D.N. 42875 (Stengel, J.). The Court in that case filed a Memorandum of Decision dated June 10, 1990, from which Burgundy Hills initially filed an appeal but later withdrew. Judge Stengel's decision is therefore, the final determination of the rights of the parties on the issues litigated. Brockett v. Jensen, 154 Conn. 328, 337-338 (1966). CT Page 3000
Some quarrying operations took place at the site from the 1930's, long before the enactment of zoning regulations in 1957. The 1957 zoning regulations did not allow quarrying in the zone thus the quarry became a nonconforming use. Judge Stengel, however, was unable to determine the "size and location of [the] nonconforming right, which right must relate to the size and location in 1957." The trial court, in its decision, directed the plaintiffs to apply for a Special Permit, if they wished to do so, and to present evidence in the course of that application on the issues of the size and location of the nonconformity.
In 1990 the plaintiffs did, in fact, apply for a Special Permit. Following public hearing the Commission rendered its decision finding 5.5 acres of the tract to be nonconforming as of 1957. (Although it did grant a Special Permit to allow quarrying of 10.5 acres).
It should be noted that, pursuant to more recent zoning regulations adopted in 1979, the property is now zoned "R-1" in which zone quarrying operations are permitted by special permit. Of course, any area that was nonconforming in 1957 may be quarried without the need for a special permit.
Based on testimony from William Smallwood, a partner in Burgundy Hills, Burgundy Hills Associates owns the property in question and is aggrieved. Midwood Quarry and Construction, Inc., as the lessee of Burgundy Hills is also aggrieved.
The first ground for appeal is the claimed rejection of evidence as to quarry operations prior to 1957.
It seems clear that Judge Stengel directed the Commission to determine the extent of the nonconformity as it existed in 1957 when the zoning regulations were first adopted, as indicated by the following language from his decision:
"A nonconformity is a use ___ allowed by virtue of its existence at the time that the regulations are adopted." (page 8).
"There is insufficient evidence to establish the exact number of acres used for quarrying in 1957." (Page 17).
"It is thus far concluded that the nonconforming use became fixed as of 1957, that the quarrying operation was confined to the acreage so designated in 1957 ___." (Page 19). CT Page 3001
"Notwithstanding its status as a nonconforming use, that portion of the property which was actively quarried in 1957 and which may lawfully be continued as a nonconforming use ___." (Page 22).
"The Court enters a judgment declaring the following: ___
2) That the nonconforming use is confined to the size and location in effect in 1957." (Pages 22-23).
The letter from the Town Attorney, which the plaintiffs claim was an incorrect legal opinion, (R-69), referred to the decision and following that language, opined that the nonconforming area was that currently being mined in 1957, and that the Commission did not have to look back to areas historically being quarried back to the 1930's.
The Commission, in the minutes of its meeting of February 25, 1991 (R-92, page 2), stated that its determination reflects both Judge Stengel's decision and the Town Attorney's opinion, and rejected evidence purporting to show activities from the 1930's and 1940's as bearing upon a nonconforming use in 1957.
The Commission permitted any evidence the plaintiff had to be introduced. Unless it had some bearing on the extent of the use in 1957, that evidence would not have been helpful to the Commission. The plaintiffs argue that a quarry operation must be viewed in a special light, that it is a unique use of land, and therefore any land which had been appropriated for excavation prior to 1957 should be considered nonconforming. That interpretation appears to be overly broad and overly expansive. The cases relied upon by the plaintiffs do not support their position that there is a distinction between the phrase (as used in the Tolland zoning regulations) allowing nonconforming uses "as of" the date of their enactment and "on" that date. It seems clearly settled that a nonconforming use is one which was in existence on the date zoning regulations were enacted. Historical uses may be relevant if they pertain to that question, but are not otherwise helpful.
The case of Beckish v. Planning Zoning Commission,162 Conn. 11 (1971), does use the term "before", but in the context of the decision it does not appear that the Court intended to place any special significance to the term, and it appears that the word "before" was intended to be read as meaning the status of the use when the zoning regulations went into effect. The question of length of time of the CT Page 3002 nonconformity was not a critical factor in that case. DeFelice v. Zoning Board of Appeals of the Town of East Haven, 130 Conn. 156 (1943), also relied upon by the plaintiff, dealt with a different kind of issue. In that case the issue was whether more modern equipment (a wet sand classifier) was an extension or an intensification of a nonconforming use (a steam shovel). There was no question of the area of the use.
Likewise the issues in Cummings v. Tripp, 204 Conn. 67
(1987) are very different from those in this case. That case essentially involved the rental periods of cabins from seasonal to year round use and statements from that case must be read in light of the issues that Court was deciding. None of the cases relied on by the plaintiffs interpreted our law of nonconforming use any differently than was expressed by Judge Stengel in his earlier opinion.
The Court finds the Commission utilized the correct standard in determining that the nonconformity was that which was in existence in 1957.
As to the second ground of appeal, the plaintiff submits that aerial photographs taken in 1962 were utilized by the Commission for the purpose of showing the area of active excavation in 1957.
The Commission accepted more than one photograph. There was one taken in 1952 (ROR 105). The photographs could be used for comparison purposes and could be used to assist in determining the area committed to mining operations in 1957. The Commission had substantially more evidence before it than the 1962 photograph complained of. A local board is not held to the same standards of evidence that a court would be required to obey. There is no evidence to show that the Commission was misled by the 1962 photograph or that it unfairly influenced its decision.
The Court does not find that the admission of this photograph deprived the plaintiff of a fair hearing before the Commission.
Lastly, the plaintiffs claim a quarry has peculiar characteristics and the Commission failed to consider that fact.
There are other jurisdictions that utilize a theory of "natural expansion" and a "diminishing asset" theory under which quarrying operations may be considered by principles with which other zoning matters need not be. These CT Page 3003 principles are discussed by Judges Burns in his recent decision Connecticut Resources Recover Authority et al v. Wallingford Planning Zoning Commission, Superior Court, Judicial District of New Haven, D.N. CV 89-280326. The plaintiffs in the instant case specifically state they are not claiming either of these theories in support of their position. That case, which involved a question of the extent of a nonconforming use, was decided on the basis of a finding of insufficient evidence, that is, it was a factual issue.
The Court knows of no basis under Connecticut law to treat quarrying operations any differently than any other nonconforming use, and that includes the public policy against expansion of such use. Thayer v. Zoning Board of Appeals, 114 Conn. 15 (1931). DeForest Hotchkiss v. Planning Zoning Commission, 152 Conn. 262, 268 (1984).
Thus, the Commission in this case pursuant to Judge Stengel's decision, and the law of this state, was obliged to give the plaintiff a full and fair hearing on the extent of the nonconforming use in 1957. The extent of the use has been defined as that property so utilized as to be "irrevocably committed" to that use, Lebanon v. Woods,153 Conn. 182, 197 (1965). If the Commission's decision reflects an honest judgment, reasonably exercised, the Court may not substitute its judgment for that of the Commission even though it might not have arrived at the same decision, Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47, 49
(1984).
A review of the record indicates that the Commission could have reasonably and fairly concluded that the 5.5 acres they found to be nonconforming was all that was proven by the plaintiffs to be distinctly "irrevocably committed" to quarry operations in 1957.
Judge Stengel recognized that only a portion of the entire tract was appropriated for quarrying and indicated the likelihood that a "fair and reasonable" estimate would probably be the best determination which could be made.
The Commission considered photographs and maps, testimony from the prior owner and neighbors about the activity, and town records. The defendant in its brief, pages 27-29) points to seventeen (17) record items related to the extent of the use which the Commission had for its consideration.
The Court has reviewed the record including those seventeen (17) items referred to specifically by the CT Page 3004 Commission, and the maps submitted to the Commission (R-92), and concludes that the plaintiff had a full and fair hearing. Based on the record, the Commission could have reasonably reached the conclusion it did. Its decision therefore is found not to be arbitrary, unlawful or an abuse of discretion.
The appeal is dismissed.
BY THE COURT, HON. LAWRENCE KLACZAK, J. SUPERIOR COURT JUDGE