[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal brought pursuant to Connecticut General Statutes Section 8-9, which incorporates the provisions of Connecticut General Statutes Section 8-8. The plaintiffs jointly appeal from the defendant East Lyme Planning Commission's (hereinafter referred to as "Commission") denial of plaintiffs' subdivision and resubdivision applications, and denial of plaintiff Laurelwoods' request for a waiver.[1]
On August 8, 1989, the plaintiff Laurelwoods Development Corp. (hereinafter referred to as "Laurelwoods") filed an application with the defendant Commission for approval of a 41-lot subdivision, to be called Rosecliff (Return of Record Exhibits 1, 18). The plaintiff Eastern Connecticut Redevelopment Company (hereinafter referred to as "Eastern") filed an application for a resubdivision of an existing abutting lot (Lot #35, in a separate, previously approved subdivision) into three parcels to allow a roadway to pass through said Lot #35 to provide a second access to the Rosecliff subdivision (Return of Record Exhibit 18). The plaintiffs are related companies and their applications were inseparable and interdependent upon each other, and were so dealt with as such by the parties and the Court.
The public hearing was held on these applications on September 19, 1989 and continued to October 3, 1989 (Return of Record Exhibits 6, 7, 8, 9). Notice of the public hearing was published on September 6, 1989 and September 16, 1989 (Return of Record Exhibit 2). Notice of the public hearing was published within the time limits set forth in Connecticut General Statutes Section 8-26.
The Laurelwoods application contained a request for a waiver of, inter alia, Section 6-9-1(6) of the East Lyme Subdivision Regulations (hereinafter referred to as "Regulations") (Return of Record Exhibit 1).
On November 14, 1989, the Commission voted to deny the waiver request and to deny the Laurelwoods and Eastern applications (Return of Record Exhibit 11). Notice of these decisions was published November 25, 1989 (Return of Record Exhibit 2).
On December 5, 1989, the plaintiffs commenced this appeal by causing it to be served upon the East Lyme town clerk and the chairman of the defendant Commission. The appeal was commenced within the fifteen-day time limit set forth in Connecticut General Statutes Section 8-8(a), as amended. CT Page 3479
Aggrievement is a prerequisite to maintaining an appeal. See Smith v. PZB, 203 Conn. 317, 321 (1987). The owner of property subject to a commission's decision is aggrieved. See Bossert Corp. v. Norwalk, 157 Conn. 279, 285 (1968). In addition, a party having a specific, personal and legal interest in the property which interest is specially and injuriously affected, is aggrieved. Primerica v. PZC,211 Conn. 85, 92-3 (1989). At the hearing on this appeal, testimony was given that plaintiff Laurelwoods owns some of the land involved in its subdivision application and has an option to purchase the remaining land, and that plaintiff Eastern owns the land involved in its resubdivision application. The Court, therefore, finds that the plaintiffs are aggrieved. III.
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988); Parks v. PZC, 178 Conn. 657, 663 (1979). The Court may only determine whether the Commission has acted illegally, arbitrarily, or in abuse of its discretion. See Frito-Lay, Inc.,206 Conn. at 573; Raybestos-Manhattan, Inc. v. PZC, 186 Conn. 466, 470
(1982). The Court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. PZC, 211 Conn. 85, 96 (1989); Burnham v. PZC,189 Conn. 261, 265 (1983).
The burden of proof to demonstrate that the Commission acted improperly is upon the plaintiff. Burnham, supra, at 266.
 IV.
The following issues were presented by this appeal: (1) whether it was necessary for the plaintiffs to obtain a waiver of Regulations Section 6-9-1(6); (2) whether the denial of the waiver was reasonably supported by the record; (3) whether the record reasonably supports the Commission's denial of the plaintiffs' subdivision and resubdivision applications; (4) whether the Commission improperly based its decision to deny the waiver on evidence received outside the public hearing; and (5) whether the Commission's actions constitute an unconstitutional taking of plaintiffs' property.
It is noted that in their complaint, the plaintiffs raise an additional claim that one or more of the Commission members were predisposed against these applications. This claim is not briefed by the plaintiffs. Issues not briefed are considered abandoned. See DeMilo v. West Haven, 189 Conn. 671, CT Page 3480 681-2 n. 8 (1983).
The Court will deal with each of these remaining issues in turn.
When exercising its function of approving or disapproving a subdivision plan, the municipal planning commission is acting in an administrative capacity and has no discretion or choice but to approve a subdivision if it conforms to the town's regulations. Reed v. PZC, 208 Conn. 431,433 (1988). If the subdivision plan does not conform as required, the plan may be disapproved. Id.
 1. NEED FOR WAIVER OF SECTION 6-9-1(6) Regulations Section 6-9-1(6) provides:
 (6) Maximum uninterrupted length of any street between points of intersection with other through streets shall be 1500 feet. This length limitation may be waived in accordance with Section 4-14 of this Regulation.
(Return of Record Exhibit 3, p. 34.)
The requested waiver of Section 6-9-1(6) concerned the proposed extension of an existing dead end street known as MacKinnon Place as a second access into the Rosecliff subdivision. The parties to this appeal filed with the court a stipulation dated January 25, 1991, wherein they stipulated that: the proposed total block length of MacKinnon Place, including its existing length, measures 2,915 feet; the existing length of MacKinnon Place measures 1,595 feet; and the proposed extension of MacKinnon Place measures 1,320 feet.
The plaintiffs argue in this appeal that a waiver of Section 6-9-1(6) was not necessary because the proposed portion of MacKinnon Place, which is the only portion within the boundaries of the Rosecliff subdivision, measures less than 1,500 feet. The plaintiffs claim that the defendant Commission improperly interpreted Section 6-9-1(6) to apply to the entire length of MacKinnon Place. However, the record reveals that the plaintiff Laurelwoods applied for a waiver of Section 6-9-1(6) as part of its subdivision application (Return of Record Exhibit 1) and that it never raised the claim that a waiver was not necessary in the proceedings before the Commission. See Return of Record Exhibit 23a (letter from plaintiff's attorney to Commission explaining only why waiver should be granted); see also Return of Record Exhibits 21 and 22 (a recording of the transcripts of the CT Page 3481 public hearings reveal that this claim was not made.)
The Connecticut Supreme Court has stated:
 "(W)e reaffirm the principle that we will not set aside an agency's determination upon a ground not theretofore fairly presented for its consideration because such action on our part would deprive the agency of an opportunity to consider the matter, make its ruling, and set forth the reasons for its action."
Finkenstein v. Administrator, 192 Conn. 104, 114 (1984); see also Burnham v. Administrator, 184 Conn. 317, 323. An issue not properly before the zoning authority and not considered when its decision was rendered should not be addressed by the trial court in deciding the plaintiffs' appeal. Zachs v. ZBA,218 Conn. 324, 329 (1991). Accordingly, the Court may not review the plaintiffs' claim that no waiver was necessary and must proceed on the assumption that the block length requirement of Section 6-9-1(6) applies to the entire length of MacKinnon Place, existing and proposed.
 2. WHETHER DENIAL OF WAIVER WAS REASONABLY SUPPORTED BY RECORD
Regulations Section 4-14 sets forth the procedure for waivers and establishes the following preconditions to granting a waiver:
 (1) The waiver has been requested in writing by the applicant in the application submission;
 (2) The property for which the waiver is sought is affected by conditions which affect the property and are not generally applicable to other land in the area;
 (3) Physical features of the property or its location cause exceptional difficulty or unusual hardship in meeting the requirements of these Regulations;
 (4) The granting of a waiver will not have a significantly adverse effect upon adjacent property, the environment, or the public health and safety; CT Page 3482
 (5) The granting of the waiver will not be in conflict with the Plan of Development;
 (6) Where it is proposed to vary any engineering standard contained in these Regulations, a report from the Town engineer has been requested and considered by the Commission;
 (7) The requested waiver is the minimum deviation from the requirements of these Regulations necessary to permit subdivision of subject land. (Return of Record Exhibit 3, pp. 18-19.)
The only statement in the record of the reasons for the Commission's denial of the subject waiver is found in the minutes of the November 14, 1989 meeting. (Return of Record Exhibit 11.) The minutes state that the waiver was denied by unanimous vote "for reasons stated by the Commission in its discussion." (Return of Record Exhibit 11, at p. 239.) During the discussion, various Commission members expressed concern over the safety of the road since it would be "long and steep," and concern that this was not "the minimum deviation required to develop this property under the regulations" since if only 19 lots were developed on this parcel, there would be no need for this second access through MacKinnon Place (Return of Record Exhibit 11, pp. 238-39.)
The plaintiffs argue that they introduced evidence at the public hearing showing that they satisfied all seven of the requirements in Regulations Section 4-14. In particular, the plaintiffs point to expert testimony by their traffic consultant and their professional engineer stating that granting the waiver to allow the extension of MacKinnon Place would have no adverse impact on public safety and traffic, and would, instead, benefit public safety by providing a second means of access to neighboring existing subdivisions (Return of Record Exhibit 21, pp. 8-10, 27-28). Further, the plaintiffs' project manager and attorney testified that all other possibilities for providing a second access to this subdivision had been investigated, and extending MacKinnon Place was the only available access (Return of Record Exhibit 21, pp. 6, 8, 9, 11).
However, the Commission also had before it the statements of numerous neighbors who spoke at the public hearing and wrote letters to the Commission objecting to the extension of MacKinnon Place on the grounds of safety. (Return CT Page 3483 of Record Exhibit 21, pp. 13, 16-19, 21-23, 32, 33-37; Exhibit 22, pp. 5-6, 19-20, 26, 28-29, 32). In addition, a petition with the signatures of forty neighbors was submitted to the Commission objecting, inter alia, to the granting of the waiver on the ground that traffic coming down the "steep grade" of the extension would be "a detriment to the safety of our children." (Return of Record Exhibit 25). According to the plaintiffs' engineer, the extension of MacKinnon Place would have up to a 10 percent grade and the existing cul-de-sac end of MacKinnon Place has an 8 1/2 percent grade (Return of Record Exhibit 21, pp. 27-28).
In weighing the conflicting evidence on the question of the effect on public safety of the requested waiver, the Commission exercises its broad discretion. See Burnham v. PZC,189 Conn. 261, 265 (1983), where the court held, "The credibility of witnesses and the determination of issues of fact are matters solely within the province of the agency."
Further, the Commission need not rely on expert opinions on matters such as street and traffic safety, but instead may rely on personal knowledge and the opinions of laypersons. Central Bank for Savings v. PZC, 13 Conn. App. 448,455-56 (1988). The requirement "(t)hat a waiver may not have an adverse impact on neighboring properties or on the public health and welfare simply emphasizes the broad discretion of the commission in considering a waiver request, and of the court in evaluating a Commission's decision." Tondro, Connecticut Land Use Regulation, pp. 108-09 (1979).
The plaintiffs cite the case of Sowin Associates v. PZC, 23 Conn. App. 370 (1990), for the proposition that "(g)eneral policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit." Sowin Associates v. PZC, supra, at 376.
However, the plaintiffs' reliance is misplaced, as the decision in Sowin Associates is limited to subdivision plans which already satisfy the town subdivision regulations and when the plan does so, Sowin held that offsite traffic concerns could not be considered when deciding to approve or disapprove the plan, and said that, "there is a conclusive presumption that such use does not adversely affect the district." Id. at 374 (quoting, TLC Development, Inc. v. PZC,215 Conn. 527, 532-33 (1990) (emphasis omitted)). In such a situation, the Commission is precluded from inquiring into the effect of the proposed subdivision on offsite traffic. Id. However, on the facts of this case, there is no such CT Page 3484 "conclusive presumption" since the proposed extension of MacKinnon Place was expressly not permitted by the applicable regulations. Further, Section 4-14(4) of its Regulations specifically directs the Commission to consider the effect of the waiver on public safety, and in doing so, it considered onsite traffic and safety.
"The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached (citations omitted). The action of the Commission should be sustained if even one of the stated reasons is sufficient to support it. (citations omitted)." Goldfeld v. PZC, 3 Conn. App. 173, 178 (1985). It is evident that there was substantial evidence on the record which reasonably supported the Commission's denial of the requested waiver on the ground that granting it would have a significant adverse impact on public safety.
 3. WHETHER SUBDIVISION AND RESUBDIVISION APPLICATIONS PROPERLY DENIED
As the Court finds that the denial of the requested waiver of Regulations Section 6-9-1-(6) was within the Commission's discretion then it follows that the plaintiff Laurelwoods' subdivision application was properly denied since the proposed subdivision did not satisfy the block length requirement in Section 6-9-1(6) of the Regulations. See Reed, supra, at 433 (if a proposed subdivision does not conform to the subdivision regulations as required, the application may be disapproved. See also Weatherly v. Town Plan and Zoning Commission of Fairfield, 23 Conn. App. 115, 120 (1990).
As for plaintiff Eastern's proposed resubdivision of Lot #35 to allow for the extension of MacKinnon Place to pass through, the Commission denied that application on the ground that "the major Rosecliff subdivision was denied so there would be no useful purpose for which this resubdivision was intended and it would be creating three separate parcels of land which would not conform to the Subdivision regulations." (Return of Record Exhibit 11, p. 240.)[2] The Court finds that the Commission's denial of plaintiff Eastern's resubdivision application is supported by the record, since the granting of the resubdivision application would have resulted in the creation of three lots which would not have conformed to the Regulations.
4. RECEIPT OF EVIDENCE OUTSIDE THE PUBLIC HEARING
The plaintiffs argue that the Commission's denial of the waiver request was invalid because it was based on CT Page 3485 evidence not presented at the public hearing, a letter to the East Lyme Planning Commission dated December 2, 1988 from Attorney Dwight Merriam of Robinson Cole. (A copy of the letter was attached to defendant's brief.) The letter sets forth the reasons that the law firm included the block length waiver regulation in the draft revision of the subdivision regulations, and a copy of the letter was provided to the applicant's attorney prior to the hearings. The minutes of the November 14, 1989 meeting at which the Commission voted to deny the plaintiffs' waiver request reveal that one Commission member had "re-read the document from Robinson Cole relative to the block length regulation." (Return of Record Exhibit 11, p. 239.) A local zoning authority has an interest in confidential communications between it and its attorney. See ZBA v. FOIC, 198 Conn. 498, 502 (1986). A commission composed of laymen is entitled to professional technical assistance in carrying out its responsibilities. Frito-Lay, Inc., 206 Conn. 554
at 571 (1988); see also McCrann v. Town PZC, 161 Conn. 65,77 (1971) (a commission is entitled to technical assistance from its staff outside the public hearing). It was not improper for the Commission member to re-read the letter from Robinson Cole, especially since the letter was prepared before the applications here were filed, and was general and explanatory in nature and did not refer in any way to the particular subdivision plan under consideration, but merely reviewed the purpose and intent of Section 6-9-1(6) of the town's subdivision regulations, and went on to list similar regulations relating to block lengths in other towns.
Even if the re-reading of the Robinson Cole letter was improper, "it was at most harmless error because the action of the Commission is adequately supported by assigned reasons not based on the allegedly tainted evidence." First Hartford Realty Corp. v. PZC, 165 Conn. 533, 545 (1973).
 5. WHETHER COMMISSION'S ACTION CONSTITUTES UNCONSTITUTIONAL TAKING
The plaintiffs argue that the Commission's application of Regulations Sections 6-9-1(6) to their property results in an unconstitutional taking. "There is, however, no confiscation of property or a taking in the constitutional sense unless the property cannot be used for any reasonable and proper purpose; . . . as where the economic utilization of the property is, for all practical purposes, destroyed." Laurel, Inc. v. State, 169 Conn. 195, 201 (1975) (citations omitted); see also Primerica v. Planning Zoning Commission of Greenwich, 211 Conn. 85 at 98-99 (1989). Even the substantial lessening of the value of property is not sufficient to establish a taking in the constitutional sense. CT Page 3486 DeForest Hotchkiss Co., 152 Conn. 262, 271 (1964). "The maximum possible enrichment of a particular landowner is not a controlling purpose of zoning." Id. at 272 (citation omitted). The burden is on the party claiming an unconstitutional taking to prove that the property has been rendered valueless. Id. at 271. The court may not base a finding of unconstitutional taking on speculative evidence or mere predictions about future events. See Luf v. Southbury, 188 Conn. 336, 351-52
(1982).
The plaintiffs claim in their brief that the Commission's decision "effectively limited the plaintiffs' subdivision to nineteen lots." (Plaintiffs' Brief at p. 15). The plaintiffs further contend that the development of nineteen lots on their property is not "feasible" because of the cost of road construction. (Plaintiffs' Brief at p. 15). The Court has no evidence before it, other than the unsubstantiated assertions in plaintiffs' brief, that the Commission's denials of the plaintiffs' plan prevented their properties' effective use for any purpose allowed by law and hence the plaintiffs have failed to meet their burden of proving an unconstitutional taking.
For the foregoing reasons, the plaintiffs' appeal is dismissed.
Teller, J.