[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This case is an appeal from a denial of an Inland Wetlands permit to construct a bulky waste disposal facility and recycling facility on a 52 acre parcel of land in Wallingford, Connecticut. The parcel of land is in an industrial zone and consists of an undeveloped parcel and a parcel with a mobile home trailer park. The application, as modified, sought to fill approximately 3.2 acres of wetlands.
After a lengthy hearing on the matter over a period of several months the commission voted to deny the permit. The reasons stated for denial were:
 "1. According to the testimony presented at the public hearing, beginning on March 20, 1991, and all the information included as part of that hearing, although altered by filling, this wetland which is located directly between a major landfill and the Quinnipiac River is still managing to function as a filter between the two, thus protecting the watercourse. If restored it will function even better which is important and necessary as the leachate production commonly increases during the operating life of a landfill, peaks within a few years after closure and persists in generally diminishing concentrations for many years. While I have no major objections to the recycling facility, using the wetlands as a bulky waste landfill will further lower its capacity to perform this filtering function and may contribute to the leachate in years to come.
 2. One viable alternative to the application would be the elimination of the bulky waste landfill area, the restoration of CT Page 10645 disturbed wetlands and the construction of a recycling facility on an area of the parts of land which would have a less detrimental impact on the wetlands. This would allow the applicant to operate the recycling facility which has a positive environmental effect without the negative impact of the additional filling of wetlands. The recycling center may not be profitable for five to seven years, as currently proposed, but I believe the applicant can figure out a way to make it profitable sooner and even a small profit after five years is more profit than the parcel is generating now.
 3. The short term use of the property as a bulky waste landfill will render it useless for any other activity thus foreclosing any future options for the land, especially environmentally.
 4. The 3.2 acres of wetlands to be filled and the 32.4 of wetlands on the property will be irreversibly committed and they will lose much of their filtration and wildlife habitat values.
 5. It has not been proven by the applicant that this activity is suitable environmentally for the area in which it is proposed. Conversely testimony from staff and the public indicates a detrimental effect on surrounding wetlands and a major watercourse if the application is approved. Exhibit 81, pp. 3-4."
The plaintiff herein also filed a taking claim. That claim was fileD [filed] as No. CV 91-0322776. The Town of Wallingford's motion to consolidate the two cases was granted by Licari, J., on January 2, 1992. Subsequent to Judge Licari's ruling, the matter was processed under No. CV 91-0318300S.
Although the Commissioner of Environmental Protection did not participate at the local agency level, the Commissioner was served in accordance with the statute and is a party to this case.
The complaint was amended so that the present complaint before the court is in two counts, the first count is an appeal from the denial of wetlands permit, and the second entitled "Taking of Property by Inverse Condemnation Without Just Compensation" is a regulatory taking claim. The present complaint is dated September 5, 1991. CT Page 10646
The defendants made a motion to strike the joining of the taking claim with the administrative appeal. That motion was denied by Licari, J., who ruled:
 "DENIED. 1. Procedurally, a motion to strike is not available in this proceeding — C.P.B. 257(D)(e). 2. Substantively, in light of the Chioffoletti cases, there is no dispute that a "taking" claim can be raised along with this administrative appeal. First English, 482 U.S. 304 (1987), authorizes money damages for an unlawful taking. Chioffoletti I and II never reached the question of money damages but there is at least the implication in those cases that money damages could have been awarded in the same proceeding — at least on the theory of economy of actions. Accordingly, within the parameters of the motion to strike, this court cannot conclude on the present state of the law that the count based on an illegal taking and the corresponding claim for money damages should be stricken."
AGGRIEVEMENT
The court finds the plaintiff Steven J. Barbarino, Sr. to be aggrieved. On August 3, 1995 the court held a hearing to determine whether the plaintiff was aggrieved within the meaning of § 22a-43(a) of the General Statutes. At that hearing the plaintiff testified that he had applied for and been denied a permit to fill approximately 3.2 acres of wetlands. The wetlands were part of the 25 acre parcel which plaintiff owned adjacent to the Wallingford landfill. The plaintiff testified that his 25 acres were but one part of a 52 acre parcel intended for development. He stated that he owned the 25 acres adjacent to the landfill. He testified that the estate owned approximately 25 acres and that his sister-in-law, Esther Tortz, owned another small piece of property. Plaintiff testified that he was the executor of the estate.
Defendants did not dispute plaintiff's ownership of the disputed wetlands. There was some controversy concerning evidence of a probate court order "closing" the estate for "dormancy" pursuant to Conn. General Statute § 45a-331(b). Plaintiff testified he never received the dormancy order. Following the hearing on aggrievement, the Commissioner of Environmental Protection, in accordance with the court's direction, filed a brief. In that brief he appeared to concede the aggrievement. The CT Page 10647 court adopts the reasoning of Ellenthal v. Inland Wetlands andWatercourses Agency of Greenwich, 1994 Conn. Super. LEXIS 1282 Star 5 (1994) (Alexander, J.) and holds that the plaintiff need not show sole or entire ownership; the plaintiff need only show some ownership or legal interest which was adversely affected by the agency decision. Accordingly, the plaintiff is aggrieved.
ISSUES
This dispute has been pending since 1991 and has been assigned to a number of trial judges for hearings and motions. In an effort to simplify the matter, this court has reviewed the pleadings and believes that the following issues are presented in the case:
 I. CAN A REGULATORY TAKING CLAIM BE COMBINED WITH A WETLANDS ADMINISTRATIVE APPEAL?
 II. CAN A PHYSICAL INVASION TAKING CLAIM BE COMBINED WITH A WETLANDS ADMINISTRATIVE APPEAL?
 III. DOES THE ADMINISTRATIVE RECORD IN THIS CASE SUPPORT THE PERMIT DENIAL?
 IV. DOES THE ADMINISTRATIVE RECORD IN THIS CASE SUPPORT A DETERMINATION OF "FINALITY" OF THE DECISION OF THE WETLANDS COMMISSION?
 V. MAY AND/OR MUST THE COURT HEAR EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM OF "FINALITY" OF THE ADMINISTRATIVE TAKING, AND IF THE COURT MAY HEAR SOME EVIDENCE, WHAT TYPE OF EVIDENCE MAY BE HEARD?
DISCUSSION
 I. CAN A REGULATORY TAKING CLAIM BE COMBINED WITH A WETLANDS ADMINISTRATIVE APPEAL?
This court holds that the regulatory taking claim may be combined with the administrative appeal. This matter appears to have been settled by the Supreme Court in Chioffoletti, 209 Conn. 544
(1989). Equally important, it appears to have been settled in this case by the ruling of Judge Licari on the motion to strike. The combination of the regulatory taking claim and the administrative appeal would appear to be the law of the case and CT Page 10648 the court, particularly in view of the Supreme Court holding inChioffoletti, sees no reason to revisit the issue decided by Judge Licari.
The regulatory taking claim may be combined with a wetlands appeal.
 II. CAN A PHYSICAL INVASION CLAIM OF TAKING BE COMBINED WITH AN ADMINISTRATIVE APPEAL FROM A WETLANDS AGENCY?
Judge Licari and this court each found the combination of the regulatory taking claim with the administrative appeal proper relying primarily on Chioffoletti. In Chioffoletti, the Supreme Court held:
 "The plaintiffs took exception to this ruling. The defendant maintains that the plaintiffs were precluding by our holding in Florentine v. Darien, 142 Conn. 415 (1955) when challenging the constitutionality of the defendants' action in an administrative appeal. . . . The plaintiffs in Florentine raised in their appeal to this court the question of whether by seeking a variance from the Darien Board of Appeals they could thereafter be foreclosed in challenging the constitutionality of the action of the zoning commission. . . . If the view expressed in Florentine were controlling in the case at hand, therefore, the trial court would have correctly concluded that the plaintiffs were barred from challenging the constitutionality of the defendants' action in their administrative appeal. We conclude however that our holding in Florentine is not applicable to an appeal from an inland wetlands agency because the legislature has provided otherwise. . . . General Statute section 22a-43a(a) provides in part that `if upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking.' For such an appeal this statute modifies the procedure prescribed in Florentine for mounting a constitutional challenge. It allows a party aggrieved by the action of an inland wetlands commission to raise a taking claim in an administrative appeal rather than an independent proceeding." Chioffoletti, pp. 549, 550.
The plaintiffs in the instant case have eventually arrived at CT Page 10649 a two-count writ. One count is clearly an administrative appeal from the doings of the inland wetlands commission. The second count is labelled "Taking of Property by Inverse Condemnation Without Just Compensation." Plaintiffs have alleged that denial of the wetlands permit is a final action by the local agency and consequently constitutes a taking. Clearly this regulatory taking by denying the permit, if final, is before this court for a hearing de novo on the value of the taking pursuant to the Supreme Court's holding in Chioffoletti, However, mixed in with the plaintiffs' second count are allegations such as the following from paragraph 30:
 "(2) The defendant commission has made it clear in its denial and its subsequent enforcement order that it will not allow henceforth the filling of any wetlands on the site, in order to preserve and maximize the filtration of leachate from the town landfill and the protection of the Quinnipiac River."
To some extent the allegation may simply be an attempt to reinforce the plaintiffs' position that the local agency action is "final", but there also appears to be, particularly in some of the plaintiffs' briefing of the matter, an allegation of direct physical invasion. The plaintiffs' alternative theory seems to be that the Town of Wallingford has appropriated his property for the purpose of serving as a filter for the town landfill.
If in fact the Town of Wallingford has appropriated the plaintiffs' property to serve as a filter for its landfill and protect the Quinnipiac River, this taking was done either by the town or some agency of the town other than the Inland Wetlands and Watercourses Commission. The court does not rule on this claim of taking by actual physical invasion. The court does hold that such a claim is not the type of regulatory claim authorized to be joined with an administrative appeal by the Supreme Court's decision in Chioffoletti. While the court expresses no opinion on the plaintiffs' right to raise its claim of physical invasion in an appropriate action, the court holds that the physical invasion claim, in contrast to the regulatory taking claim, is not properly before this court. Such a claim cannot be properly joined with an administrative appeal. Equally important, indispensable parties are missing from this proceeding so that a physical invasion claim cannot properly be adjudicated.
 III. DOES THE ADMINISTRATIVE RECORD SUPPORT THE PERMIT DENIAL? CT Page 10650
On appeal the commission's denial must be sustained "if examination of the record discloses evidence that supports any one of the reasons given". Huck v. Inland Wetlands andWatercourses Agency, 203 Conn. 525, 540 (1987). In this case the plaintiff concedes, in his amended appeal dated September 5, 1991, that one of the reasons given by the commission is true, namely, "the wetlands to be filled presently protects the Quinnipiac River by acting as a filter for leachate leaving the town/CRRA landfill a function which filling would deplete." Subsequently, the plaintiff conceded that additional reasons offered by the commission were valid. In his brief dated February 18, 1992 the plaintiff concedes again that the reasons presented above as well as three others were supported by the evidence.
In that brief the plaintiff writes:
 "To explain this first argument and identify the precise issue for the court, it is first necessary to review the reasons for denial.
 The plaintiff concedes the factual accuracy of reason #1 (filtration function being performed by wetlands on plaintiff's property); reason #3 (construction of bulky waste landfill will foreclose alternative future uses of that area); and reason #4 (filling of 3.2 acres will irreversibly commit the property to industrial use and will detract from wildlife habitat infiltration functions of that area). To the extent that reason #5 states that the proposed activity is environmentally unsuitable because of the future loss of filtration of leachate and other pollutants, the plaintiff further concedes that reason." "Prehearing Brief of Plaintiff Steven J. Barbarino, Sr. in support of appeal from wetlands permit denial", dated February 18, 1992 at page 22.
This court finds that the plaintiff has not seriously contested the validity of the permit denial. Rather, the plaintiff has argued that that denial is "final" and accordingly amounts to a regulatory taking.
The court holds that the administrative record supports the permit denial.
 IV. DOES THE ADMINISTRATIVE RECORD SUPPORT A DETERMINATION OF "FINALITY" OF THE DECISION OF THE CT Page 10651 WETLANDS COMMISSION AT LEAST IN THE ABSENCE OF ADDITIONAL EVIDENCE?
The Supreme Court has held in Gill v. Inland Wetlands andWatercourses Agency, 219 Conn. 404, 415 (1991), as follows:
 "The plaintiff is not entitled to judicial review on the merits of his regulatory taking claim until he has met the requirement of establishing the finality of the agency determination."
The Supreme Court further has held:
 "In most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is `final' for the purposes of the taking clause." Gill,
at 217, citing Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 607 (1991).
In the present case the parties appeared to concede at argument that only one application was submitted to the Inland Wetlands and Watercourses Commission. There is some indication that other projects were discussed with various town officials and agencies. There is nothing in the record directly indicating that the commission would not consider a second application either for the same use with modifications or for a different use. In the present case the decision of the commission does not imply that a smaller or revised plan would automatically be rejected.
There is evidence in the record that the commission was willing to consider other uses for the property or revised plans regarding the bulky waste site and recycling center. A warehouse, which is a permitted use in this zone, was suggested. The environmental planner pointed out that the plaintiff's application had failed to use uplands which could reduce the impact on the wetlands. (Record, Exhibit 75, p. 53; Exhibit 77, p. 14.) This point was again mentioned by the commission chairman (Record, Exhibit 77, p. 6) and questioned by other members (Record, Exhibit 77, pp. 9-10). One commissioner suggested placing a recycling center on the non-wetlands. (Record, Exhibit 77, p. 10.) The plaintiff himself, through his expert Mr. Donald, indicated that the bulky waste site could possibly be expanded into a non-wetland area. (Record, Exhibit 75, pp. 29-30.) CT Page 10652
The administrative record does not support a determination of "finality" or the commission decision. The plaintiff has failed to show that the agency will not allow any reasonable development of the property and therefore a decision on the merits of his regulatory taking claim is premature.
 V. MAY THE COURT HEAR EVIDENCE TO ESTABLISH THE PLAINTIFF'S CLAIM OF "FINALITY" OF THE ADMINISTRATIVE TAKING?
The question of whether new evidence of finality may be presented to the court for the first time at the time of the court hearing of an administrative appeal appears to be a case of first impression in Connecticut. The Supreme Court inChioffoletti held:
 "We construe the provisions of section 22a-43a(a) that `If the court finds that the action appealed from constitutes the equivalent of a taking without compensation' as contemplating that the trial court should decide the taking issue de novo in light of all the evidence property presented to it, including, but not limited to the administrative record. Since this court has indicated that an administrative agency is incompetent to decide certain constitutional issues [citations omitted] it would make little sense for the trial court pursuant to 4-183(e) to remand a case to an inland wetlands commission for the purpose of hearing evidence relative only to the issue of an unconstitutional taking, which that agency may not be empowered to resolve. Presumably the legislature was aware of this judicial limitation upon the authority of administrative agencies and, therefore, used the statutory language indicating that the court should find the factbound taking issue." Chioffoletti, at 551-552.
While the Supreme Court admittedly called for a de novo
review of the taking in Chioffoletti, it appears to this court that Chioffoletti must be read in the light of the Supreme Court's holding in Port Clinton Associates v. Board of Selectmen,217 Conn. 588, 599, where the court held:
 "Rather, we read the memorandum of decision as later amplified to rely on the well established principle that there can be no regulatory "taking" and thus no deprivation of private property without just compensation until there has been a final administrative decision." See Williamson CountyCT Page 10653 Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 192, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).
The Supreme Court went on to hold in Port Clinton:
 "The regulatory taking claim advanced by the appellant has two components. First, appellant must establish that the regulation has in substance taken his property — that is, that the regulation `goes too far'. . . . Second, the appellant must demonstrate that any preoffered compensation is not just. . . . . Until a property owner has `obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property' `it is impossible to tell whether the land sustains any reasonable beneficial use or whether [existing] expectation interests have been destroyed.'" Port Clinton Associates, at 600.
In Gill v. Inland Wetlands and Watercourses Agency, 219 Conn. 404,406, the Supreme Court held:
 "We conclude that the plaintiff has failed to show that the agency will not allow any reasonable residential development of his property and, therefore, that the decision on the merits of his taking claim would be premature."
The court further held in Gill:
 "As we have recently reiterated, however, the plaintiff is not entitled to judicial review of the merits of his regulatory taking claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory taking claim bears the burden of proof that the relevant government entity will not allow any reasonable alternative uses of his property." Gill, at 415.
The Connecticut law appears to be clear that the plaintiff is not entitled to a judicial review by way of the trial de novo
referred to in Chioffoletti, until the plaintiff has successfully met the threshold burden of establishing "finality". To the extent that the plaintiff argues that he may establish finality itself in a trial de novo, the court holds that the plaintiff is mistaken. The right to a trial de novo does not enure to the plaintiff until he has borne his initial burden of proof. CT Page 10654
The court is aware of the fact that certain evidence is at times admissible in administrative appeals in which there is no provision for a trial de novo. Thus § 4-183, a provision of the Uniform Administrative Procedure Act applicable to the instant case, provides:
 "If, before the date set for hearing on the merits of an appeal, an application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. [emphasis supplied]
 The appeal shall be conducted by the court without a jury and shall be confined to record. If alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear all argument and receive written briefs." § 4-183(h)(i).
The plaintiff in the instant case has provided a list of twelve potential witnesses. Potential witnesses 1 through 9 and 11 through 12 are various experts who would be expected to shed light on the ability to develop the property but, in the opinion of the court, are of little or no assistance in determining whether the local agency would entertain and approve a different application. Number 10 on that list names the individual commissioners who participated in the local proceeding. The court sees little value to the testimony of individual commissioners unless the plaintiff were allowed to quiz the individuals on their thoughts when they acted upon the local application. The court holds that to allow finality of a taking claim to be established by the cross examination of commission members would be an impermissible invasion of the "deliberative process privilege" more fully explained in Zinker v. Doty, 637 F. Sup. 138
(D.Conn. 1986).
Further, the court notes that the provisions for the introduction of evidence at the trial in § 4-183 are more limited than the provisions for the introduction of evidence in land use appeals under § 8-8. Section 8-8(k) provides: CT Page 10655
 "The court shall review the proceedings of the board and may allow any party to introduce evidence in addition to the contents of the records if (1) the record does not contain a complete transcript of the entire proceeding before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take the evidence or may appoint a referee or committee to take such evidence as it directs and report the same to the court, with his or its finding of facts and conclusions of law. Any report of a referee or committee shall constitute a part of the proceedings on which the determination of the court shall be made." [emphasis supplied]
It is clear that a trial judge has discretion to allow the introduction of evidence when the trial court determines that "additional testimony is necessary for an equitable disposition of the appeal" in a zoning, planning or zoning board of appeals case. This court recognizes that evidence is routinely admitted on the question of statutory aggrievement, classical aggrievement, and conflict of interest. The court recognizes that evidence may be admitted on other matters.
However, it appears that under the Uniform Administrative Procedure Act that the only evidence which may be taken by the court at trial is pursuant to 4-183i and that that evidence is limited to "alleged irregularities in procedure [or] . . . facts necessary to establish aggrievement and not shown in the record." Evidence which otherwise might be taken at the discretion of the trial court in an § 8-8 appeal appears to be covered by §4-183(h). Such "additional evidence" which is material may be added in an administrative procedure appeal but it appears mandatory that it be added at the agency level and then the matter is returned to the court for decision.
It thus appears to this court that in an appeal from the doings of a wetlands agency in which the finality of the agency decision is put in issue, the only evidence which may be taken by the court is evidence necessary "to establish aggrievement" or "procedural irregularities".
The appeal provisions of § 22a-43 roughly parallel the provisions of § 8-8. Section 22a-43 provides: CT Page 10656
 ". . . Any person aggrieved by a regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of 90 feet of the wetland or watercourses involved in any regulation, order, decision or action made pursuant to said sections may appeal to the superior court in accordance with the provisions of section 4-183. . ."
It thus appears to the court that if the plaintiff wishes facts added to the record, perhaps including facts bearing on the question of finality, it may make an application to the court for leave to present additional evidence. Under proper circumstances the court may order the additional evidence to be taken before the agency on conditions determined by the court. No such application was made to this court in this proceeding. Absent such an application, while the court has some discretion in the taking of evidence in cases appealed under § 8-8, it appears to the court that the court has no discretion to directly take evidence on the question of finality in a wetland appeal under the procedures set forth in § 4-183. It further appears to the court that until finality has been established, the right to a hearing de novo granted to plaintiffs both by Chioffoletti and by the express language of § 22a-43 does not exist.
The court finds that the action appealed from must be shown by the applicant to be final based upon the record before it or based upon a record which has been supplemented by a remand to the agency before the right to the trial de novo exists in the applicant.
There can be little question that an appeal under § 22a-43
is subject to the rules of § 4-183. There is equally little question that in § 4-183(h) the legislature has provided for a remand to the agency for additional facts. And, in § 4-183(i) the legislature has provided for evidence directly to the court on the question of aggrievement or procedural irregularity. If the legislature intended the court to lake evidence on the question of finality, as that term is expanded inGill, it would be a simple matter to provide, either in §22a-43, § 22-43a or § 4-183, that the court had discretion to receive evidence on finality. Absent such legislative authorization, this court finds itself without authority to hear evidence in support of the plaintiff's claim of the finality of the administrative taking. CT Page 10657
For the foregoing reasons the administrative appeal set forth in the first court of the amended complaint is dismissed because the denial of the permit is supported by the record.
The regulatory taking claim set forth in the second count of the administrative appeal is dismissed as premature because the plaintiff has failed to bear his burden of showing finality of the local regulatory decision.
THE COURT
BY: KEVIN E. BOOTH, JUDGE